**Tracey L. FARMER–CUMMINGS, Appellant,**

v.

**PERSONNEL POOL OF PLATTE COUNTY, Respondent.**

No. SC 85084.

Supreme Court of Missouri, En Banc.

July 29, 2003.

Kevin D. Meyers, Charles W. Gotschall, Kansas City, for Appellant.

Jo Stephanie Warmund, Kansas City, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

## I.

Personnel Pool of Platte County ("Personnel Pool") hired Tracey Farmer–Cummings to work at the Future Foam plant. While working in the plant, Ms. Farmer–Cummings developed a severe asthmatic condition that requires continuing medical attention. The Labor and Industrial Relations Commission ("Commission") awarded Ms. Farmer–Cummings compensation for past medical expenses relating to her asthma. These expenses included amounts that were actually paid by either Medicaid, Ms. Farmer–Cummings or her health insurer or HMO, as well as medical bills considered still outstanding. The Commission did not allow Ms. Farmer–Cummings to recover fees healthcare providers adjusted from the original bills or wrote-off. Ms. Farmer–Cummings contests the Commission's disallowance of these amounts. This Court reverses and remands the case for a determination of Ms. Farmer–Cummings' continuing liability for any of the past medical expenses at issue.

## II.

In October 1991, Personnel Pool hired Ms. Farmer–Cummings to fill a temporary position at the Future Foam plant in North Kansas City. Her duties at the plant included cutting foam and drilling holes in it. The foam contained toluene diisocyanates ("TDI"), a toxin that has been shown to cause different types of asthma. Ms. Farmer–Cummings was exposed to TDI as she worked with the foam.

Ms. Farmer–Cummings developed health problems in November 1991. Initially Ms. Farmer–Cummings noticed a rash on her arm, but by November 6, 1991, her health had deteriorated such that she was hospitalized for several days with severe respiratory difficulties. Ms. Farmer–Cummings returned to work November 13, but experienced trouble breathing after she had been at the plant for five hours. While working on November 15, Ms. Farmer–Cummings experienced severe shortness of breath and asked a coworker to take her home. She never returned to her job at Future Foam.

In January 1993, Ms. Farmer–Cummings filed a claim with the Division of Workers' Compensation against Personnel

Pool.[1] Among other benefits, Ms. Farmer–Cummings sought compensation for past medical expenses. Personnel Pool has made no payment towards Ms. Farmer–Cummings' medical treatment. Some healthcare providers eventually wrote-off charges as "bad debt."

The Commission determined that Ms. Farmer–Cummings' exposure to TDI while working at the Future Foam plant caused her to develop class 4 asthma, a severe asthmatic condition. The Commission ultimately found Personnel Pool, as Ms. Farmer–Cummings' employer, liable for $118,581.99 in past medical expenses.[2] In arriving at this number, the Commission examined all Ms. Farmer–Cummings' medical bills in evidence and found the sum of all billed charges to be $158,219.71.[3] From this number, the Commission subtracted fees healthcare providers either wrote-off or adjusted from the original

bills. The Commission determined that the write-offs and fee adjustments totaled $39,637.72.[4] The amount remaining after write-offs and fee adjustments, $118,581.99, is comprised of charges either (1) paid by Medicaid, Ms. Farmer–Cummings or her private health insurer or HMO, or (2) still outstanding.[5] It is for these expenses that the Commission awarded Ms. Farmer–Cummings compensation.

### III.

Ms. Farmer–Cummings claims that the Commission erred when it refused to award her compensation for amounts written-off or adjusted from the original bills. This Court "will modify, reverse, remand or set aside an award only if the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not sup-

1. The original petition was against Future Foam. Personnel Pool was added by amendment.

2. The Commission's decision appears to award two conflicting amounts, $124,317.18 and $118,581.99. In its decision, the Commission recited the appropriate amount of past medical expenses to be awarded under the following categories: Medicaid claims, $21,616.80; health insurance/HMO claims, $4,077.29; and payments by Ms. Farmer–Cummings and other outstanding charges totaling $92,887.90. The sum of these awards is $118,581.99; thus, this Court assumes the Commission intended to award Ms. Farmer–Cummings $118,581.99 in past medical expenses.

3. In Claimant's Exhibit KK, Ms. Farmer–Cummings lists all her medical charges, which she calculated as $175,241.32. In Ms. Farmer–Cummings's brief, she claims $175,971.32 in past medical expenses. The Commission found that the amounts listed in Exhibit KK total $179,487.87. After examining the medical bills in evidence, the Commission determined that some charges detailed in Exhibit KK are not accurate and created its

own summary of Exhibit KK, modified to match the medical bills presented. The Commission attached the modified exhibit to its order and calculated the billed medical charges, prior to payment, fee adjustments and write-offs, at $158,219.71. The modified exhibit provides a summary chart indicating for each related set of medical bills the amount billed; Medicaid payments; Medicaid adjustments and write-offs; insurance/HMO payments; insurance/HMO adjustments and write-offs; payments by Ms. Farmer–Cummings; bad debt, late filing, and patient discount write-offs; and balance due.

4. The Commission's modified exhibit KK shows that of the total charges Ms. Farmer–Cummings submitted to Medicaid, healthcare providers wrote-off or made adjustments totaling $33,902.53. Of the charges submitted to a private health insurer or HMO, $4,910.92 was written-off or adjusted from the bills. An additional $824.27 was written-off as bad debt, late filing and patient discounts. The Commission reduced the originally billed charges by these amounts.

5. In making this finding, the Commission relied on its modified exhibit KK.

port the award, or there was not sufficient competent evidence in the record to warrant the making of the award." *Curry v. Ozarks Elec. Corp.*, 39 S.W.3d 494, 495 (Mo. banc 2001); *Akers v. Warson Garden Apartments*, 961 S.W.2d 50, 52 (Mo. banc 1998); section 287.495, RSMo 2000.

**IV.**

In 1927 the Missouri's workers' compensation law was created to "provide a simple and nontechnical method of compensation for injuries sustained by employees through accident arising out of and in the course of employment and to place the burden of such losses on industry." *Bethel v. Sunlight Janitor Serv.*, 551 S.W.2d 616, 618 (Mo. banc 1977). This purpose is effectuated in part by ensuring that the employer provides "such medical, surgical, chiropractic, and hospital treatment . . . as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury." Section 287.140.1, RSMo 2000.[6]

**A.**

■ Personnel Pool, as Ms. Farmer–Cummings' employer, is responsible for all medical expenses resulting from her compensable injury. Section 287.140.1. All such medical "fees and charges" shall be "fair and reasonable". Section 287.140.3.[7] There is no real issue as to whether the initial fees were "fair and reasonable" as those terms are commonly understood. The real issue is whether the original medical bills remain "fees and charges"

collectable by the employee if they are subsequently reduced or written-off by the provider in the collection process.

Twice Missouri courts have determined that an employee is not entitled to compensation for healthcare provider write-offs. The claimant in *Mann v. Varney Construction*, 23 S.W.3d 231, 233 (Mo.App. 2000), sought compensation from the Second Injury Fund for medical charges in the amount originally billed. The court ruled that an employee is not entitled to compensation for Medicaid write-off amounts when the total amount submitted to Medicaid will never be sought from claimant. *Id.* In *Lenzini v. Columbia Foods* 829 S.W.2d 482, 487 (Mo.App.1992), the court reduced a workers' compensation award by an amount that "had already been written off by those health care providers". The court referred to the inclusion of write-off amounts in the award as a "computational error[ ]". *Id.*

Implicit in both decisions is the requirement of actual liability on the part of the employee. *See Samsel v. Allstate Ins. Co.*, 204 Ariz. 1, 59 P.3d 281, 286 (2002). The fee or charge is the amount the healthcare provider actually requires the employee to pay, initially or thereafter, for the service provided. Write-offs and adjustments that extinguish the liability of an injured employee, absent evidence that such a fee adjustment or write-off is the result of a collateral source benefit not provided by the employer (see below), are not "fees and charges", but simply reductions there-

---

6. This statute has been amended since Ms. Farmer–Cummings' injury; however, the cited portion remains unchanged.

7. In their briefs, both parties cite to the most recent version of section 287.140.3. The version of statute in effect at the time of the injury, however, controls. *See Tillman v. Cam's Trucking, Inc.*, 20 S.W.3d 579, 583 n. 7 (Mo.App.2000). That version reads: "All fees

and charges under this section shall be fair and reasonable . . . and shall be limited to such as are fair and reasonable for similar treatment of other similarly injured persons." Section 287.140.3, RSMo Supp.1991. Because an employee can recover only "fees and charges" under both versions, it makes no difference in this case which controls.

of. Thus, Ms. Farmer–Cummings' fees and charges include only those amounts that must be paid for her healthcare for which she would otherwise be liable.

### B.

Ms. Farmer–Cummings claims, however, that section 287.270 mandates that any such reductions not be considered, and accordingly, that her recovery not be diminished by them. This statute instructs the court not to reduce an employer's liability by the amount of contributions to the employee from another source. Section 287.270 reads, "No savings or insurance of the injured employee, nor any benefits derived from any other source than the employer or the employer's insurer for liability under this chapter, shall be considered in determining the compensation due hereunder". This section clearly was intended to allow the employee to benefit from any collateral source the employee might have available to him or her, independent of the employer, whether purchased or not. If the employer has not provided such a source, the employer has no right under the statute to claim benefit from it. "Payments from ... any source other than the employer or the employer's insurer for liability for Workmen's Compensation are not to be credited on Workmen's Compensation benefits." *Shaffer v. St. John's Reg'l Health Ctr.* 943 S.W.2d 803, 807 (Mo. App.1997).

Ms. Farmer–Cummings alleges, however, that the term "savings" should be accorded a broader meaning and encompasses the reductions at issue here. A "saving" is defined as "the act or instance of economizing." *Moore v. General Motors Corp.,* 558 S.W.2d 720, 731 (Mo.App. 1977). "[S]aving" is also defined in Webster's Third New International Dictionary as "the act or an instance of economizing: reduction in cost." Webster's Third New International Dictionary, p.2020 (1961). Although the write-offs and fee adjustments constitute a "reduction in cost", this reduction was not effected by any act of Ms. Farmer–Cummings. Ms. Farmer–Cummings incurred no expense or effort, nor did she "economize" by foregoing any privilege. Likewise, write-offs and fee adjustments are not "benefits". Rather, these amounts are often the product of a healthcare provider's decision to balance the provider's books in accordance with actual amounts received or a decision that the outstanding amount is not worth pursuing. Such write-offs and fee adjustments are neither "savings ... of the injured employee" nor "benefits derived from any other source than the employer or the employer's insurer for liability".

### C.

As previously noted, the aim of Missouri's workers' compensation law is to remedy the losses incurred by an employee as a result of a compensable injury. *Bethel,* 551 S.W.2d at 618. To award Ms. Farmer–Cummings compensation for medical expenses for which she has no liability would result in a windfall rather than compensation. On the other hand, to reduce Ms. Farmer–Cummings' award when she may still be held liable for those reduced amounts vitiates the policy behind workers' compensation-to place upon the shoulders of industry the burden of workplace injury. *See id.* Personnel Pool must reimburse Ms. Farmer–Cummings for all medical expenses incurred as a result of her workplace injury. Moreover, Personnel Pool should not receive an advantage for failing to timely pay medical bills incurred in such treatment at Ms. Farmer–Cummings' expense.

Ms. Farmer–Cummings had the burden and has produced documentation detailing her past medical expenses and has testified to the relationship of such expenses to her compensable workplace injury. *See*

*Martin v. Mid–America Farm Lines, Inc.*, 769 S.W.2d 105, 111–12 (Mo. banc 1989); *Esquivel v. Day's Inn*, 959 S.W.2d 486, 489 (Mo.App.1998). It is a defense of Personnel Pool, as employer, to establish that Ms. Farmer–Cummings was not required to pay the billed amounts, that her liability for the disputed amounts was extinguished, and that the reason that her liability was extinguished does not otherwise fall within the provisions of section 287.270. *See Martin*, 769 S.W.2d at 112; *Esquivel*, 959 S.W.2d at 489.

Contrary to Personnel Pool's suggestion, the Commission did not find that Ms. Farmer–Cummings has ceased to be liable to healthcare providers for write-offs and fee adjustments.[8] After a thorough review of Ms. Farmer–Cummings' medical bills, this Court cannot determine with certainty whether Ms. Farmer–Cummings remains liable for either the write-offs or adjusted fees. Ms. Farmer–Cummings did not testify as to her continuing liability for these adjusted charges.[9] Affidavits accompanying the medical bills are ambiguous, at best.[10]

### V.

The Commission's decision is reversed, and the case is remanded for a determination of Ms. Farmer–Cummings' continuing liability for any of the past medical expenses at issue. If Ms. Farmer–Cummings remains personally liable for any of the reductions, she is entitled to recover them as "fees and charges" pursuant to section 287.140. If any of the reductions resulted from collateral sources independent of the employer, they are not to be considered pursuant to section 287.270, and Ms. Farmer–Cummings shall recover those amounts. However, if Personnel Pool establishes by a preponderance of the evidence that the healthcare providers allowed write-offs and reductions for their own purposes and Ms. Farmer–Cummings is not legally subject to further liability, she is not entitled to any windfall recovery.

All concur.

8. The Commission stated that "there was no agreement by the parties in this case that the total amount submitted to Medicaid will never be sought from claimant. Conversely, there was no evidence that claimant will be responsible for reimbursing the providers for the Medicaid adjustments and write-offs." The Commission made no mention of Ms Farmer–Cummings' continuing liability for other disputed expenses.

9. Ms. Farmer–Cummings testified only that she had contact with collection agencies regarding two separate bills.

10. For example, Ms. Farmer–Cummings' medical charges from Cameron Community Hospital, Inc., total $2,146.00 as originally billed. Payments and adjustments of $2,146.00 are represented on the same bills. The accompanying affidavit reads "The total amount charged for the services were [sic] $0 and was reasonable at the time and place the services were provided." Medical charges from Diagnostic Imaging North, PC, total $379.00 as originally billed. Write-offs, fee adjustments, and payments totaling $345.00 are represented on the same bills. The accompanying affidavit, however, reads: "The total amount charged for the services were [sic] $0 and was reasonable at the time and place the services were provided." As one last example, the medical charges from Dr. Ryan Reynolds of Lintecum & Nickell, P.C., total $1,371.00 as originally billed. Medicaid adjustments and payments totaling $1,371.00 are represented on the same bills. The affidavit accompanying these bills states: "The total amount charged for the services were [sic] $1,371.00 and was reasonable at the time and place the services were provided." Obviously, the numbers listed in the affidavits are subject to several interpretations, including the amount of charges as originally billed or the amount still owed to the healthcare provider.