Patsy ELLIS, Claimant–Respondent,

v.

MISSOURI STATE TREASURER as Custodian of the Second Injury Fund, Appellant.

No. SD 29573.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 14, 2009.

Rehearing Denied Jan. 4, 2010.

Application for Transfer Denied March 2, 2010.

Chris Koster, Attorney General, and Christina M. Hammers, Assistant Attorney General, Jefferson City, MO, for Appellant.

Thomas P. Carlton, Joplin, MO, for Respondent.

DON E. BURRELL, Judge.

The Missouri State Treasurer, as custodian of the Second Injury Fund ("the SIF"), appeals an award by the Labor and Industrial Relations Commission ("the Commission") that ordered it to pay $165,459.99 to Patsy Evonne Ellis ("Claimant"). The SIF claims the Commission erred by 1) ordering the SIF to pay Claimant for medical bills that were already paid by Claimant's personal insurance or written-off by her medical providers; and 2) if the SIF was liable for anything other than Claimant's out-of-pocket medical expenses, by ordering the SIF to pay Claimant the entire billed amount of those expenses ("the full cost") instead of the amount actually paid by her personal insurance and accepted by her medical providers. Although the SIF believes the resolution of this appeal will require us to determine whether the Commission misapplied the law when it ruled that section 287.270 [1] prevents the SIF from reducing its liability based on payments or write-offs made by entities other than Claimant's employer or its insurer, we do not reach that issue and affirm the award of the Commission based on the SIF's failure to rebut Claimant's evidence that she remained liable for the full cost of her medical treatment.

## Background

Claimant was seriously injured in an automobile accident on December 10, 2004. It is undisputed that Claimant's accident was work-related, that her employer was uninsured for workers' compensation purposes, and that her injuries were severe. Fortunately, Claimant had various personal insurance policies that provided coverage for a significant portion of the medical treatment she received as a result of the accident. Claimant paid all of the premiums for these insurance policies.

The full cost of Claimant's treatment was $165,459.99. Claimant's personal insurance carriers paid her medical provid-

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

ers a total of $77,328.98 toward those bills. Claimant's medical providers also made various downward "adjustments"[2] to their bills. After crediting Claimant with the $77,328.98 paid by her insurance and $60 she had previously paid, Claimant's medical providers showed her as owing a remaining balance of $581.40—the amount the SIF claims it should have been directed to pay. We will refer to the amounts paid by and still expected from Claimant plus the payments made by her personal insurance carriers as the "discount price" of her medical bills ($77,970.38).

At the hearing on her claim for compensation, Claimant presented Exhibit T, a compilation of all of her medical bills. Claimant also testified that it was her "understanding" that she was still liable for the payment of the total amount of those bills ($165,459.99) as of the date of hearing and that they were all related to the treatment of her work-related accident. Exhibit T was received into evidence. During its cross-examination of Claimant, the SIF offered into evidence Exhibit # 1, a summary page showing the amounts billed by Claimant's various medical providers and indicating those amounts that had been paid toward them by Claimant's personal insurers and amounts that had been adjusted downward. Exhibit # 1 was also received into evidence.

The Administrative Law Judge ("ALJ") awarded Claimant the full cost of her medical treatment ($165,459.99). After it was timely requested to review that award, the Commission affirmed it and adopted the ALJ's decision as its own. Additional facts relevant to the resolution of this appeal will be set forth below in the context of our analysis of the SIF's claims of error.

### Standard of Review

■ Section 287.495 governs appeals from the Labor and Industrial Relations Commission.

The appellate court shall have jurisdiction to review all decisions of the commission pursuant to this chapter where the division has original jurisdiction over the case. [ ... ] in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

We defer to the Commission on issues of fact and the credibility and weight to be given to conflicting evidence but review questions of law *de novo. Allcorn v. Tap Enter's, Inc.*, 277 S.W.3d 823, 827 (Mo. App. S.D.2009). "If, as here, the award of the Commission attaches and incorporates an award and decision of the ALJ, we may consider the findings, but only so far as they are consistent with the decision of the

---

**2.** The record does not reveal whether these adjustments were required under various contracts the medical providers had with Claimant's insurance carriers or were written-off for some other reason. The total amount of the "adjustments" found by the Commission also seems to exceed the difference between the full cost and the amounts paid by Claim-ant's insurance. However, as the figures The Commission used were provided by the SIF (the appealing party) and no one has challenged them on appeal, we will ignore the apparent discrepancy other than to note that it might undermine the persuasive value of the exhibit from which the figures were drawn.

Commission." *Braswell v. Mo. State Highway Patrol,* 249 S.W.3d 293, 297 (Mo. App. S.D.2008). We will not reverse the decision of an administrative agency that reaches the right result even if it gave a wrong or insufficient reason for its ruling. *See Davis v. School of the Ozarks, Inc.,* 188 S.W.3d 94, 105 (Mo.App. S.D.2006); *Skill-Path Seminars v. Summers,* 168 S.W.3d 465, 467 (Mo.App. W.D.2005); *Lauderdale v. Division of Employment Sec.,* 605 S.W.2d 174, 178 (Mo.App. E.D.1980) (internal citations omitted).

■■■ The facts are not viewed in the light most favorable to the Commission's decision. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003); *Kent v. Goodyear Tire and Rubber Co.,* 147 S.W.3d 865, 867 (Mo.App. W.D.2004). Instead, "[a] court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton,* 121 S.W.3d at 222–23. "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Id.* at 223.

### Analysis

■■■ The SIF's first point alleges the Commission erred as a matter of law when it determined that section 287.270 applies to claims brought against the SIF under section 287.220.5.[3] The SIF claims its position is supported by sound public policy[4] and two cases decided, respectively, by the eastern and western districts of this court. *See Mann v. Varney Constr.,* 23 S.W.3d 231 (Mo.App. E.D.2000); *Phillips v. Par Elec. Contractors,* 92 S.W.3d 278 (Mo.App. W.D.2002).

Claimant argues that *Mann* and *Phillips* both failed to address critical language contained in section 287.220.5 and incorrectly refused to follow this district's decision in *Wilmeth v. TMI, Inc.,* 26 S.W.3d 476 (Mo.App. S.D.2000), which assumed that section 287.270 did apply to claims brought against the SIF under section 287.220.5.

Whether section 287.270 applies to claims brought against the SIF under section 287.220.5 presents a difficult question of statutory construction, but it need only be addressed once it has been demonstrated that the claimant is no longer liable to pay her medical bills because they have been paid by a third party that will not be seeking reimbursement for that payment. *See Farmer–Cummings v. Pers. Pool of Platte County,* 110 S.W.3d 818, 822 (Mo. banc 2003) (stating that to reduce an in-

---

3. The SIF's first point on appeal also alleges the Commission erred in making its award payable directly to Claimant instead of to her medical providers. However, the argument that follows neither cites any authority in support of that contention nor explains why such authority is not available. "Failure to cite the law or explain the absence of the law preserves nothing for review." *Chipperfield v. Mo. Air Conservation Comm'n,* 229 S.W.3d 226, 238 (Mo.App. S.D.2007) (citing *Patterson v. Waterman,* 96 S.W.3d 177, 178 (Mo.App. S.D.2003)).

4. The SIF argues that while it might be fair to penalize employers who thwart the require-ments of the law and do not procure the required workers' compensation insurance by requiring them to pay the full cost of an injured employee's medical bills, to make the SIF do so 1) unfairly penalizes those employers who do follow the rules (as a portion of their workers' compensation insurance premiums fund the SIF); and 2) any amounts expended beyond the bare minimum necessary to prevent a claimant from having to bear the costs associated with a work-related injury unnecessarily reduce the funds available to other injured employees of uninsured employers.

jured employee's award for expenses she may still be held liable for would "vitiate[ ] the policy behind workers' compensation—to place upon the shoulders of industry the burden of workplace injury."). *See also Leach v. Bd. of Police Comm'rs of Kansas City,* 118 S.W.3d 646, 655 (Mo.App. W.D. 2003) ("Punishing a claimant for an employer's failure to insure thwarts the General Assembly's purpose in establishing the Second Injury Fund, and it ignores the legislature's mandate to construe workers' compensation statutes liberally by resolving all doubts in favor of compensation.") (citing Section 287.800; *Thomas v. Hollister, Inc.,* 17 S.W.3d 124, 126 (Mo.App. W.D.2000)).

The SIF's second point on appeal alleges the Commission erred as a matter of law in granting an award that exceeded the "amount [Claimant]'s health care providers accepted as reasonable payment from [Claimant]'s private insurance companies contrary to section 287.140.3."

Section 287.140.3 provides, in pertinent part, that:

> A health care provider shall not charge a fee for treatment and care which is governed by the provisions of this chapter greater than the usual and customary fee the provider receives for the same treatment or service when the payor for such treatment or service is a private individual or a private health insurance carrier. [5]

Based on this section, Appellant argues that if it has liability for any amount in excess of Claimant's actual out-of-pocket expenses, it should not exceed the $77,328.98 "discount price" paid by Claimant's personal insurers because the remainder of the $165,459.99 was either adjusted or written-off by her medical providers.[6] This argument shares a common assumption with point one that Claimant has no liability to pay any amounts above those paid by her insurance carriers. As a result, before analyzing the SIF's specific allegations of error, we will first address the more general threshold issue of what expenses the SIF is statutorily required to pay, then proceed to a discussion of who has the burden of proving what continuing liability Claimant has in regard to her work-related medical bills.

Claimant's claim against the SIF was brought pursuant to section 287.220.5 which reads as follows.

> If an employer fails to insure or self-insure as required in section 287.280, funds from the second injury fund may be withdrawn to cover the *fair, reasonable, and necessary expenses* to cure and relieve the effects of the injury or disability of an injured employee in the employ of an uninsured employer, or in the case of death of an employee in the employ of an uninsured employer, funds from the second injury fund may be withdrawn to cover fair, reasonable, and

---

5. In addressing this contention, it should first be noted that this subsection of the workers' compensation law governs what a medical provider is allowed to charge an insured employer; it does not speak to what a claimant is allowed to receive—a matter governed in this case by section 287.220.5. Section 287.220.5 does not define what is meant by the phrase "fair, reasonable and necessary expenses." Section 287.020, the general definitions section of the workers' compensation law, is also bereft of any such definition.

6. The SIF fails to cite any legal authority for the proposition that the cost to cure under section 287.220.5 is equal to the discount price of a claimant's medical bills. In any event, we do not need to decide the issue as we agree with Claimant that the SIF had the burden to prove that Claimant's liability for her medical expenses was less than she claimed, and that it failed to do so.

necessary expenses in the manner required in sections 287.240 and 287.241. In defense of claims arising under this subsection, the treasurer of the state of Missouri, as custodian of the second injury fund, *shall have the same defenses to such claims as would the uninsured employer.* Any funds received by the employee or the employee's dependents, through civil or other action, must go towards reimbursement of the second injury fund, for all payments made to the employee, the employee's dependents, or paid on the employee's behalf, from the second injury fund pursuant to this subsection. The office of the attorney general of the state of Missouri shall bring suit in the circuit court of the county in which the accident occurred against any employer not covered by this chapter as required in section 287.280 [emphasis added].

Claimant argues she established the proper amount of her claim pursuant to the requirements of *Martin v. Mid–America Farm Lines, Inc.,* 769 S.W.2d 105, 111–12 (Mo. banc 1989), by producing documented evidence of her medical bills and testifying that they were all related to her compensable work-related injury. Once that had been accomplished, Claimant asserts the burden then shifted to the SIF to establish by a preponderance of the evidence that Claimant's liability for the full cost of her medical bills was somehow extinguished by a means other than those collateral sources excluded by section 287.270. The SIF cites no law to the contrary but argues that "[i]t would be an overwhelming burden [ . . . ] to require the Fund to contact each entity to enquire about the status of any liens or outstanding medical bills."

Although it involved a workers' compensation claim brought against an employer pursuant to section 287.140, not a claim against the SIF under section 287.220.5, our high court's decision in *Farmer–Cummings,* 110 S.W.3d 818 (Mo. 2003), discussed "fair and reasonable" medical expenses and whether a claimant could recover the cost of medical expenses that had been adjusted or written-off.

> Personnel Pool, as Ms. Farmer–Cummings' employer, is responsible for all medical expenses resulting from her compensable injury. Section 287.140.1. All such medical "fees and charges" shall be "fair and reasonable." Section 287.140.3. There is no real issue as to whether the initial fees were "fair and reasonable" as those terms are commonly understood. The real issue is whether the original medical bills remain "fees and charges" collectable by the employee if they are subsequently reduced or written-off by the provider in the collection process.

*Id.* at 821. The Court stated, "Write-offs and adjustments *that extinguish the liability of an injured employee,* absent evidence that such a fee adjustment or write-off is the result of a collateral source benefit not provided by the employer[ ], are not "fees and charges," but simply reductions thereof." *Id.* (emphasis added). The Court further reasoned that,

> Although the write-offs and fee adjustments constitute a "reduction in cost", this reduction was not effected by any act of Ms. Farmer–Cummings. Ms. Farmer–Cummings incurred no expense or effort, nor did she "economize" by foregoing any privilege. Likewise, write-offs and fee adjustments are not "benefits".[7] Rather, these amounts

7. Unlike the claimants in *Farmer–Cummings, Phillips,* and *Mann,* Claimant did forgo privi-

leges and incur expenses when she paid the premiums on her personal insurance policies.

are often the product of a healthcare provider's decision to balance the provider's books in accordance with actual amounts received or a decision that the outstanding amount is not worth pursuing. Such write-offs and fee adjustments are neither "savings ... of the injured employee" nor "benefits derived from any other source than the employer or the employer's insurer for liability".

*Id.* at 822. In reaching its conclusion that allowing the claimant to recover such amounts would be improper, our high court noted:

> To award Ms. Farmer–Cummings compensation for medical expenses for which she has no liability would result in a windfall rather than compensation. On the other hand, to reduce Ms. Farmer–Cummings' award when she may still be held liable for those reduced amounts vitiates the policy behind workers' compensation-to place upon the shoulders of industry the burden of workplace injury.

*Id.*

In *Farmer–Cummings*, the claimant provided detailed documentation of her past medical expenses and testified that they were related to her workplace injury. 110 S.W.3d 818, 822 (Mo. banc 2003). Once that showing had been made, our high court stated, "[I]f [the employer] establishes by a preponderance of the evidence that the healthcare providers allowed write-offs and reductions for their own purposes [not as a result of payments made by collateral sources] and [the claimant] is not legally subject to further liability, she is not entitled to any windfall recovery." *Id.* at 823.

In the instant case, Claimant provided such documentation of her medical expenses in Exhibit T. She testified it was her understanding that she remained liable at the time of the hearing for the full cost of her medical bills, $165,459.99. Claimant also testified it was her understanding that her Blue Cross/Blue Shield policy, which paid "a sizeable amount" of her medical bills, was ERISA[8]—qualified. Claimant testified she "had seen the word ERISA and read about it" in some of her insurance paperwork, and that her daughter, who was taking care of Claimant's paperwork, had told Claimant the policies were ERISA policies.

If Claimant's personal insurance policies were ERISA–qualified, she could be required to reimburse her insurers for the amounts they have paid. Section 502(a)(3)(B) of ERISA, 29 U.S.C. sections 1001–1003, states, "A civil action may be brought (3) by a participant, beneficiary, or fiduciary (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. Section 1132(a)(3)(B). In 2006, the United States Supreme Court held that certain ERISA qualified providers may seek reimbursement from its beneficiary "when the beneficiary has recovered for its injures from a third party." *Sereboff v. Mid Atlantic Med. Serv's, Inc.*, 547 U.S. 356, 359, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006). The Supreme Court found that this type of reimbursement qualified as an equitable lien allowed under Section 502(a)(3). *Id.* at 361, 126 S.Ct. 1869, *citing* 29 U.S.C. Section 1132(a)(3). The SIF argues that no such possibility exists be-

---

The *Mann* claimant could only have been liable for a $19,547.50 Medicaid lien. 23 S.W.3d at 233. The claimant in *Phillips* testified he did not have to pay for "*any* of his past medical bills." 92 S.W.3d at 287 (emphasis in original).

8. The Employee Retirement Income Security Act of 1974.

cause Claimant did not prove that her insurance policies were subject to ERISA. Claimant argues that the SIF had the burden of proving that she was *not* subject to any liability under ERISA.

Claimant's evidence as to her continuing liability for the payment of her medical bills was as set forth above. The SIF did not present any evidence at the hearing to contradict Claimant's testimony. At the SIF's request, the ALJ held the record open for thirty days for the express purpose of allowing the SIF to present additional evidence on the issue of whether or not Claimant would have any obligation to reimburse any of her health insurance providers. The SIF presented no such evidence during that thirty-day period. As in *Ellis v. Western Elec. Co.,* 664 S.W.2d 639, 644 (Mo.App. S.D.1984), "there was ample time for the [SIF] to present or attempt to present this evidence." Additionally, the record does not indicate whether any write-offs or adjustments by Claimant's health care providers would have occurred if Claimant's personal insurance policies had not existed. Who is harmed by the absence of such evidence depends on who bears the burden of proof.

"The essential elements of a workmen's compensation case are required to be proven in the same manner as essential elements are established in the ordinary action at law. A compensation claimant is not required to make stronger proof than would be required to establish liability under the common law." *Davies v. Carter Carburetor,* 429 S.W.2d 738, 749 (Mo.1968) (quoting *Smith v. Terminal Transfer Co.,* 372 S.W.2d 659, 664 (Mo. App.K.C.D.1963)). To prove a workers' compensation claim, "the burden is on the employee to prove cause and effect between the event relied on by him and the damage to him." *Id.* at 751. Claimant "did not have to absolutely establish the essential elements of her case; it is sufficient if she shows them by a reasonable probability." *Ellis,* 664 S.W.2d at 642. "'Probable' means that it appears to be founded in reason and experience which inclines the mind to believe, but leaves room for doubt." *Id.*

As the party claiming the right to a credit, the SIF carried the burden of proving it.

> *Point v. Westinghouse Electric Corporation,* [382 S.W.2d 436 (Mo.App. E.D. 1964)], indicates that the burden to substantiate a credit is on the employer. [*Id.*] at 439. This seems to be in accord with other analogous situations. The burden of proving payment is on the party asserting it. *Don Anderson Enterprises, Inc. v. Entertainment Enterprises, Inc.,* 589 S.W.2d 70, 73 (Mo.App. 1979); *Hubbard v. Happel's Estate,* 382 S.W.2d 416, 424 (Mo.App.1964). We think it only reasonable to put the burden of showing facts entitling it to a credit on the employer. The question then is whether this burden was met by evidence [ ... ].

*Ellis,* 664 S.W.2d at 643. *Shaffer v. St. John's Reg. Health Ctr.,* 943 S.W.2d 803 (Mo.App. S.D.2008), also supports the proposition that the burden of proving the existence of a credit is not on the employee: "The cases have held that the burden of substantiating a credit is on the employer." *Id.* at 808 (citing *Ellis,* 664 S.W.2d at 643; *Point v. Westinghouse Elec. Corp.,* 382 S.W.2d 436, 439 (Mo.App. E.D.1964)). *See also Porter v. Toys 'R' Us–Del., Inc.,* 152 S.W.3d 310, 321 (Mo.App. W.D.2004) ("Nonetheless, the burden of proof clearly rests with the employer").

Although the SIF argues it should be treated differently than an employer in these circumstances, the plain language of section 287.220.5 grants the SIF the same defenses an employer would have. As a

result, the SIF had the burden of proving that Claimant had no liability to pay her medical bills or reimburse her insurance carriers before the Commission would have been required to consider whether any sort of credit was necessary to prevent Claimant from receiving a windfall. If the Commission had been presented with evidence it deemed credible that indicated Claimant was no longer liable for some portion of her medical bills, then, and only then, would it have had to take the next step and determine whether the collateral source rule would bar the SIF from seeking a credit based on that extinguished liability.

We agree with Claimant that once she testified to the best of her knowledge that she remained liable on all of her bills, the SIF then had the burden to prove that any such reimbursement obligation did not exist or had been extinguished. As earlier indicated, no such evidence was presented. Although we acknowledge that Claimant's testimony regarding her continuing liability for her medical bills might not have been entitled to receive much weight, especially if evidence to the contrary had been presented, "[t]he Commission is authorized to base its findings and award solely on the testimony of a claimant." *Davies*, 429 S.W.2d at 748.

In arguing for a contrary result, the SIF again relies on *Mann, supra*. *Mann* is factually distinguishable as the "Commission found and the parties agree[d] the total amount submitted to Medicaid will never be sought from Claimant. Claimant will only ever be responsible for the [dollar amount] paid by Medicaid." *Mann*, 23 S.W.3d at 233. Here, Claimant testified, and the Commission found, that she remained actually liable for the full amount of her medical bills, and the SIF presented no evidence that challenged Claimant's testimony. In the absence of any evidence to contradict Claimant's testimony about her continuing liability, we cannot say that the Commission's decision on the matter was unsupported by substantial evidence or was against the overwhelming weight of the evidence. If the Commission believed Claimant's testimony that she remained legally liable for the full amount of her medical bills, its award in this case was not a windfall; it was simply the compensation the General Assembly has seen fit to allow. *See Wiedower v. ACF Indus., Inc.,* 657 S.W.2d 71, 75 (Mo.App. E.D.1983) ("Although making an award of such costs to the employee may result in a windfall, the insurance company *may* be entitled to reimbursement from the employee." (emphasis added)).

In summation, it was Claimant's burden to detail her past medical expenses and testify "to the relationship of such expenses to her compensable workplace injury." *See Farmer–Cummings,* 110 S.W.3d at 822. Once that was accomplished, if the SIF wished to challenge the amount being sought by Claimant, it had the burden to establish by a preponderance of the evidence that that she "was not required to pay the billed amounts." *Id.* at 823. Unlike the claimant in *Farmer–Cummings,* Claimant *did* testify as to her continuing liability for the full amount of her medical bills, as well as her continuing liability to repay her insurance carriers for amounts they paid on her behalf out of any award she might receive. *See id.* at 823.

The ALJ's finding on this issue, as adopted by the Commission, stated, "the Second Injury Fund failed to meet its burden of proof by a preponderance of the evidence that employee's obligation on these reductions had been extinguished." "As we do not have anything in the record indicating otherwise, we cannot say the Commission erred." *Ellis,* 664 S.W.2d at 644. The SIF had the burden of proving it

was entitled to an offset or credit and the ALJ held the record open for thirty days so that the SIF might present evidence it thought might help it meet that burden. The SIF failed to present any such evidence.

Because the Commission reached the correct result, its award is affirmed.

BATES, P.J., and BARNEY, J., Concur.