

# Missouri Court of Appeals

## Southern District

### Division One

LISA COOK,       )
            )
   Claimant-Respondent,  )
v.            )   Nos. SD34290 & SD34291
            )   Filed: October 25, 2016
MISSOURI HIGHWAY AND   )
TRANSPORTATION COMMISSION, )
            )
   Employer-Appellant.   )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### **AFFIRMED**

This is a consolidated appeal in which the Missouri Highway and Transportation Commission (Employer) appeals from two final awards of workers' compensation benefits to Lisa Cook (Claimant) for carpal tunnel syndrome of her right and left wrists, respectively. The Labor and Industrial Relations Commission (Commission) determined that Claimant was permanently and partially disabled from her bilateral carpal tunnel syndrome as an occupational disease. The Commission also ordered Employer to pay for Claimant's disfigurement after surgery, temporary total disability and past medical treatment. On appeal, Employer contends: (1) the Commission erred in determining that Claimant's claims were not barred by the statute of limitations because she sustained an

injury that was reasonably discoverable more than two years prior to the filing of her claims; (2) the Commission erred by deciding to credit the testimony of Claimant's expert on medical causation because the expert's opinion was based on incorrect knowledge of Claimant's medical history; and (3) the Commission erroneously awarded past medical expenses because Claimant testified that her medical bills were satisfied by Employer. Finding no merit in any of these contentions, we affirm.

## Factual and Procedural Background

At the time of the December 2014 hearing in this matter, Claimant was 55 years old. She had begun working for Employer in August 1997 when she was hired as a senior secretary in the traffic department, a position which she kept through 2011. Claimant's duties required her to spend 85-90% of her time at the computer performing data-entry work. Claimant described her data-entry work as involving typing letters, preparing permits, revising/updating reports, entering employee time sheet data, preparing requests for money for permit applications, preparing monthly budget reports, recording vehicle mileage, making hotel reservations, notifying district offices of permit expirations, providing clerical support for the maintenance department, performing product research, and handling email communications for the office. Her duties also included CPR instruction.

Claimant testified that she was first seen by a medical provider for wrist problems in 2005 when she saw her personal physician, Dr. Colleen Hunter-Pearson. The doctor noted that Claimant's work involved repetitive movements of the wrist and that Claimant suspected she had bilateral carpal tunnel syndrome. Dr. Hunter-Pearson referred Claimant to Dr. A. B. Chaudhari, who ordered a nerve conduction study that was performed at

Southeast Missouri Hospital in December 2005. The nerve conduction study revealed normal findings. Dr. Chaudhari told Claimant that she did not have carpal tunnel syndrome. Neither Dr. Hunter-Pearson nor Dr. Chaudhari told Claimant that they had made any diagnosis of the condition of her wrists, and neither doctor indicated to her that her wrist problems were somehow related to her work. She was treated with anti-inflammatory medication and physical therapy for her neck.

Claimant was next seen for problems with her wrists in September 2007 when Employer referred her to St. Francis Medical Center (SFMC). At the time, Claimant complained of wrist pain and swelling, which had been brought on by additional data-entry requirements that her supervisor had asked her to perform by entering old permits into the computer system. Dr. Glen Cooper at SFMC diagnosed Claimant with extensor tendinitis of wrists, right greater than left; tendinitis right elbow; and over-use tendinitis. She was treated with splints and anti-inflammatories. Claimant was seen at SFMC during four visits, the last of which was in November 2007, at which time her wrists were "pain free" and the swelling had resolved. During her 2007 treatment at SFMC, no doctor diagnosed Claimant with carpal tunnel syndrome.

In late 2010 and early 2011, Claimant began to experience pain, numbness, weakness and burning in her wrists and hands, which caused her to wake up at night. During 2011, the problems with her wrists continued to worsen, with her symptoms greater in the right wrist than the left. In September 2011, Claimant filed a Field Injury Report for the injury to her right wrist.

In October 2011, Employer sent Claimant to be examined by Dr. R. Evan Crandall. Dr. Crandall ordered another nerve conduction study performed on her right wrist only,

which was done by Dr. Daniel Phillips that same day. This second nerve conduction study was positive for moderately severe right carpal tunnel syndrome. Based on the results of this study, Dr. Crandall diagnosed Claimant with moderate to severe carpal tunnel syndrome for the right wrist only. Dr. Crandall was the first doctor who told Claimant that he diagnosed either of her wrists with carpal tunnel syndrome. Dr. Crandall indicated that Claimant's work could be a risk factor for her right carpal tunnel syndrome, but opined that it was not a work-related injury. The doctor instead relied on Claimant's medical risk factors related to carpal tunnel syndrome, including hypertension, age, gender and menopause.

In November 2011, Claimant filed a Field Injury Report for injury to her left wrist. This was based on the fact that she was having symptoms in the left wrist similar to those she had had in the right wrist, specifically "numbness, tingling, burning sensation, weakness," although the symptoms were not as severe. At that time, Employer had someone take a 45-minute video of Claimant at work, wherein she was asked to show examples of each type of work that she performed. The video did not record or reflect how much time she spent doing each task. In addition, Employer put a ghost key counter on Claimant's keyboard from November 18 – December 9, 2011, to measure the number of key strokes she made. Claimant testified that counting the key strokes during that period was not an accurate reflection of her normal work requirements because: (1) the period included holidays; and (2) during that time, those she worked for were either out hunting or were not working on jobs because it was the winter season.

On January 10, 2012, Claimant filed separate claims for carpal tunnel syndrome in each wrist and arm. In early 2012, Employer denied any additional treatment or evaluation for problems with Claimant's wrists.

In October 2012, Claimant saw Dr. Victoria Kubik in Springfield, Missouri. Dr. Kubik noted that Claimant worked for Employer, does "a lot of typing and has been doing that for 15 years." Dr. Kubik diagnosed Claimant with bilateral carpal tunnel syndrome and prescribed carpal tunnel release surgeries. Because Claimant was taking care of her father at that time and did not want to be away from him for an overnight stay in Springfield for the surgeries, she sought a physician in the St. Louis area for further treatment.

In November 2012, Claimant was seen by Dr. Bruce Schlafly. He also diagnosed bilateral carpal tunnel syndrome and recommended surgical releases, which he performed for the right wrist in late November 2012 and for the left wrist in mid-December 2012. Claimant testified that she was off work from November 28 through December 5, 2012, after the first surgery, and from December 18 through January 2, 2013, after the second surgery. Claimant testified that the release surgeries provided her with substantial relief in both wrists by eliminating the numbness and greatly reducing the pain that she experienced.

As of the date of the hearing, Claimant had occasional sharp, stabbing pain in her wrists when she was lifting and when her wrists were in an awkward position, along with numbness in her right forearm and decreased strength in both wrists. The carpal tunnel injuries affected Claimant's ability to use her wrists in the following ways: (1) she experienced decreased strength and range of motion; (2) her wrists tired more easily; (3) she was limited in performing her duties as a CPR instructor for Employer; (4) her

5

gardening activities were limited; and (5) she was unable to pick up her grandchildren since the wrist injuries. Claimant has approximately 2″ scars at each wrist from the surgeries.

Dr. Schlafly's deposition was received in evidence on Claimant's behalf. Dr. Schlafly testified that Claimant's repetitive work duties during her employment for Employer were the prevailing factor in causing her to develop bilateral carpal tunnel syndrome, which he treated with carpal tunnel release surgeries. Dr. Schlafly rated Claimant's permanent disability from her work injuries at 25% of each hand at the wrist level. Dr. Schlafly further testified that his treatment of Claimant's work injuries was reasonable and necessary and that the bills for the surgeries that he performed, from the various providers, were also reasonable and necessary.

Dr. Crandall's deposition was received on Employer's behalf. Dr. Crandall testified that he would not defer to the surgeon who performed the carpal tunnel release surgery on Claimant's left wrist as to whether there was an impingement at the carpal tunnel. Dr. Crandall would not confirm a diagnosis of carpal tunnel syndrome in that wrist. He reiterated that the prevailing factor in causing carpal tunnel in her right wrist was a combination of Claimant's medical risk factors. Dr. Crandall also testified that as of November 6, 2007, following her treatment for tendinitis, Claimant did not have any evidence of carpal tunnel syndrome in her wrists.

After the hearing, the ALJ found that: (1) Claimant's employment with Employer was the prevailing factor causing her bilateral carpal tunnel syndrome; (2) her claims were filed within the time allowed by law; and (3) she provided proper notice of the occupational diseases to Employer. The Employer was directed to pay Claimant previously incurred medical aid, temporary total disability payments, and 20% permanent partial disability plus

6

one week of disfigurement for each wrist. The Commission affirmed the ALJ's awards for each wrist through supplemental opinions. Employer appealed both awards and filed a motion to consolidate, which this Court granted. Additional facts will be included below as we address Employer's three points on appeal challenging the timeliness of the claims, medical causation and award of past medical expenses.

**Standard of Review**

We will review the findings and conclusions of the Commission and the ALJ as adopted by the Commission. *Harness v. Southern Copyroll, Inc.*, 291 S.W.3d 299, 303 (Mo. App. 2009). The scope of our review is set forth under § 287.495.1 RSMo (2000).[1] We review only questions of law and may modify, reverse, remand for rehearing, or set aside the award when the Commission acted without or beyond its power, the award was procured by fraud, the facts do not support the award, or the award is not supported by sufficient competent evidence in the record. *Id*. "A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003); *see also* Mo. Const. art. V, § 18.[2] This is because an award "contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence."

---

[1] Unless otherwise specified, all statutory references are to RSMo Cum. Supp. (2011).

[2] We note that some cases cited herein were overruled on other grounds by *Hampton*, 121 S.W.3d at 224-32. Because these cases support other principles of law not affected by the *Hampton* ruling, no further acknowledgment of *Hampton's* effect on these cases will be recited.

7

*Hampton*, 121 S.W.3d at 223.  Such an award will be rare.  *Id*.; *see Roberts v. Missouri Highway & Transp. Comm'n*, 222 S.W.3d 322, 331 (Mo. App. 2007).

We defer to the Commission's factual findings and recognize that it is the Commission's function to determine the credibility of witnesses and the weight to be given to their testimony.  *Underwood v. High Road Indus., LLC*, 369 S.W.3d 59, 66 (Mo. App. 2012).  "[C]onflicting medical theories present a credibility determination for the Commission to make."  *Armstrong v. Tetra Pak, Inc.*, 391 S.W.3d 466, 470 (Mo. App. 2012).  Therefore, the Commission's decision as to which of the various medical experts to believe is binding on this Court. *Id*. at 471.  We will not substitute our judgment on issues of fact where the Commission acts within its powers, even if we would arrive at a different initial conclusion. *Underwood*, 369 S.W.3d at 66; *see Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012) (when evidence would warrant either of two opposed findings, the reviewing court is bound by the Commission's findings; it is irrelevant that there is supportive evidence for the contrary finding).  We review questions of law *de novo.  Underwood*, 369 S.W.3d at 66.

### Discussion and Decision

*Point 1*

Employer's first point maintains that Claimant's claims are barred by the statute of limitations.  Section 287.430 generally requires a claim for workers' compensation to be filed "within two years after the date of injury[.]"  § 287.430 RSMo (2000); *see* § 287.020.3(1) (defining "injury" to be "an injury which has arisen out of and in the course of employment").  "An injury due to repetitive motion is recognized as an occupational

8

disease for purposes of this chapter." § 287.067.3.[3]  In cases of occupational disease, the statute of limitations shall not begin to run "until it becomes reasonably discoverable and apparent that an injury has been sustained related to such exposure[.]"  § 287.063.3.  The question as to when an "injury has been sustained related to such exposure" of repetitive motion becomes "reasonably discoverable and apparent" is a question of fact to be determined by the Commission.  *See Lawrence v. Anheuser Busch Companies, Inc.*, 310 S.W.3d 248, 250-51 (Mo. App. 2010).

Here, with respect to each wrist, the Commission found "as a factual matter that it was first reasonably discoverable and apparent to employee that she'd suffered … carpal tunnel syndrome arising out of and in the course of employment related to exposure to repetitive upper extremity duties":  (1) "as of October 12, 2011, when Dr. Crandall [Employer's expert] made the diagnosis of **right** carpal tunnel syndrome" and (2) "as of October 25, 2012 when Dr. Victoria Kubik first made the diagnosis of **left** carpal tunnel syndrome" (bold emphasis added).  Because Claimant filed claims for both wrists on January 10, 2012, the Commission concluded neither claim is barred by the statute of limitations.

The Commission also addressed Employer's factual arguments that the statute of limitations began to run as early as 2005, when Claimant suspected she had bilateral carpal tunnel syndrome, or in 2007, when Claimant complained of wrist pain following a data-entry project.  With respect to 2005, the Commission rejected Employer's argument by: (1) relying on Dr. Chaudhari's December 2005 nerve conduction study revealing normal

---

[3]  The term "occupational disease" is "defined to mean, unless a different meaning is clearly indicated by the context, an identifiable disease arising with or without human fault out of and in the course of the employment."  § 287.067.1.

9

findings; and (2) expressly finding that Claimant "credibly testified … that Dr. Chaudhari told her that these tests were negative for carpal tunnel syndrome[.]"  The Commission similarly rejected Employer's argument that the statute of limitations began to run in 2007, explaining:  (1) "[Employer's] own authorized treating physician, Dr. Glen Cooper, diagnosed [Claimant's] condition in 2007 as bilateral extensor tendonitis of the wrists with tendonitis of the right elbow, *not* carpal tunnel syndrome" (italics in original); and (2) "[Employer's] own evaluating expert, Dr. Evan Crandall, [testified] that there was no evidence [Claimant] was suffering from carpal tunnel syndrome in 2007."[4]  The Commission therefore concluded that it was <u>not</u> "reasonably discoverable and apparent" in 2005 or 2007 that Claimant had "suffered carpal tunnel syndrome arising out of and in the course of employment related to her exposure to repetitive duties while working for [E]mployer."

Employer's point contends the Commission erred, as a matter of law, in finding that Claimant's claims were not barred by the statute of limitations because she sustained an injury that was reasonably discoverable more than two years prior to the 2012 filing of her claims, namely in 2005 and 2007.  Employer argues that "the Commission misapplied section 287.063.3" by:  (1) relying on a "medical diagnosis from a doctor without regard to other evidence to the contrary"; and (2) making "a finding based on Claimant's subjective knowledge rather than the appropriate objective standard."  We find no merit in either of these arguments.

---

[4]  In a footnote, the Commission further chastised Employer stating:  "Employer's failure to identify evidence on the record which squarely refutes its arguments is troubling, to say the least, and calls into question the candor with which [E]mployer approaches this tribunal."

Employer's first argument, as we understand it, is essentially that the Commission misapplied § 287.063.3 by relying on a medical diagnosis when that statute does not require that a diagnosis be made in order to trigger the statute of limitations. Employer's first argument has three prongs: (1) the 2005 legislative changes to § 287.063.3 were "clearly intended to reduce the requisite knowledge to begin the running of the statute of limitations"; (2) according to **Lawrence**, 310 S.W.3d at 249, the statute of limitations may begin running for an occupational disease *before* the employee has a physician's diagnosis; and (3) according to **Miller v. U.S. Airways Group, Inc.**, 316 S.W.3d 462 (Mo. App. 2010), an employee's carpal tunnel syndrome apparent several years prior renders claims filed thereafter duplicative and impermissible. We will address each prong of this argument in turn.

The first prong of Employer's argument involves a 2005 amendment to § 287.063.3. To address this argument, some background is required. In 1959, the legislature adopted the following statute of limitations for an occupational disease claim:

> The statute of limitation referred to in Section 487.430 shall not begin to run in cases of occupational disease *until it becomes reasonably discoverable and apparent that a compensable injury has been sustained*, except that in cases of loss of hearing due to industrial noise said limitation shall not begin to run until the employee is eligible to file a claim as hereinafter provided in section 287.202.

§ 287.201.9, 1959 Mo. Laws S.B. 167 p. 13 (italics added). This subsection of the statute was construed to mean that:

> In latent injury or latent occupational disease the statute of limitations commences to run from the time it becomes reasonably discoverable and apparent *to the employee* that he has sustained a compensable injury. The injury is reasonably discoverable and apparent when the employee loses time from his work or has to seek medical advice as a result of his injury.

11

*Enyard v. Consol. Underwriters*, 390 S.W.2d 417, 422 (Mo. App. 1965) (italics added).[5]

This statutory language codified the rule that had been adopted in prior Missouri appellate decisions. *Id*. at 431. In 1997, the relevant language had been moved to § 287.063.3. *Wiele v. Nat'l Super Markets, Inc.*, 948 S.W.2d 142 (Mo. App. 1997), was a carpal tunnel syndrome case which addressed that subsection of the statute in the following fashion:

> Carpal tunnel syndrome is a known occupational disease. *Weniger v. Pulitzer Pub. Co.*, 860 S.W.2d 359, 360 (Mo. App. 1993). The statute of limitations does not begin to run on occupational disease claims "until it becomes reasonably discoverable and apparent that a compensable injury has been sustained." § 287.063.3 RSMo 1986. In construing this statute our courts have long held that mere awareness on the part of the employee of the presence of a work-related illness is not, in and of itself, sufficient knowledge of a compensable injury. *Mann v. Supreme Exp.*, 851 S.W.2d 690, 692 (Mo. App. 1993); *Sellers v. Trans World Airlines, Inc.*, 752 S.W.2d 413, 416 (Mo. App. 1988); *Moore v. Carter Carb. Div. ACF Industries*, 628 S.W.2d 936, 941 (Mo.App.1982); 29 Missouri Practice, *Workers' Compensation* § 4.44. Generally, such a condition becomes apparent when an employee is medically advised that he or she can no longer physically continue in the work environment. *Mann*, 851 S.W.2d at 692; *Thomas v. Becker Metals Corp.*, 805 S.W.2d 271, 273 (Mo. App. 1991); *Sellers*, 752 S.W.2d at 417; *Moore*, 628 S.W.2d at 941. A compensable injury occurs when the disease causes the employee to become disabled and unable to work. *Prater v. Thorngate, Ltd.*, 761 S.W.2d 226, 228 (Mo. App. 1988).

*Id*. at 146.

In 2005, the legislature deleted "compensable" and added language to read "reasonably discoverable and apparent that an injury has been sustained *related to such exposure*." 2005 Mo. Laws 911 (italics added). According to Employer, the sole reason for the change was to focus the inquiry on when the employee's condition was reasonably discoverable and apparent without regard to whether the employee had the benefit of a

---

[5] The provisions of this subsection were renumbered as § 287.063.6. *See* § 287.063 RSMo (1959); *Enyard*, 390 S.W.2d at 431. Section 287.202 was changed to § 287.197. *See* § 287.197 RSMo (1959).

diagnostician's opinion that the employee had sustained an injury related to work exposure. We disagree. We believe the purpose of this amendment was simply to change the rule applied in *Wiele* and other occupational disease cases that an employee's awareness of the presence of a work-related illness was not sufficient to start the running of the statute of limitations. *See Wiele*, 948 S.W.2d at 146; *see also Garrone v. Treasurer of State of Missouri*, 157 S.W.3d 237, 242 (Mo. App. 2004) ("occupational disease does not become a compensable injury until the disease causes the employee to become disabled by affecting the employee's ability to perform his ordinary tasks and harming his earning ability"). After this 2005 amendment, an occupational disease that is reasonably discoverable and apparent to the employee, and related to work exposure, will start the running of the statute of limitations. The Commission concluded, and we agree, that "the legislature in 2005 simply made clear that the apparent work-relatedness of an injury must be our paramount concern in answering the question when the statute of limitations begins to run in occupational disease cases."

Based upon our determination of the purpose of the 2005 amendment to § 287.063.3, the first prong of Employer's argument lacks merit. Although Claimant suspected she had carpal tunnel syndrome in 2005, she tested negative for the syndrome and was told she did not have carpal tunnel syndrome at that time. The Commission found Claimant's testimony credible, and we defer to that determination. *Underwood*, 369 S.W.3d at 66; *see also Bock v. City of Columbia*, 274 S.W.3d 555, 562 (Mo. App. 2008) ("conditions that have been found to be outside the realm of lay understanding include carpal tunnel syndrome"); *see, e.g.*, *Decker v. Square D Co.*, 974 S.W.2d 667, 669 (Mo. App. 1998) (when "a worker seeks compensation for carpal tunnel syndrome, he or she

13

must submit a medical expert who can establish a probability that working conditions caused the disease"). Further, both of Employer's experts, Dr. Cooper and Dr. Crandall, opined that Claimant did not have carpal tunnel syndrome in 2007. If it was not reasonably discoverable and apparent to trained medical experts that Claimant suffered from carpal tunnel syndrome, it would not have been reasonably discoverable and apparent to her. It was not until 2011 that Dr. Crandall first diagnosed Claimant with carpal tunnel syndrome, based on the second nerve conduction study that was positive for moderately severe right carpal tunnel syndrome at that time.[6] Similarly, the first time Claimant was told that she had left carpal tunnel syndrome was via Dr. Kubik's diagnosis in 2012. We therefore conclude the Commission did not misapply § 287.063.3 by relying on the medical diagnoses in this case to determine that Claimant's two claims were not barred by the statute of limitations.

The second prong of Employer's argument, relying on *Lawrence*, fares no better. In *Lawrence*, the employee developed ringing in her ears and other symptoms after being exposed to extended periods of loud noise at work. She did not know what was causing her ears to ring and then read several articles about tinnitus. *Lawrence*, 310 S.W.3d at 249. She was moved to a quieter work location and was diagnosed with tinnitus over twenty years later. *Id*. The employee argued that the statute of limitations began running when she was diagnosed; the employer relied on the date twenty years earlier when she figured out that she had tinnitus. *Id*. at 251-52. Because the Commission had not made a factual

---

[6] Even at that point, however, Claimant was told by Dr. Crandall that Claimant's right carpal tunnel syndrome was not work-related, and was instead caused by other medical risk factors. Therefore, it would not have been reasonably discoverable and apparent to Claimant that her carpal tunnel syndrome was caused by work-related exposure.

14

finding on the issue, the eastern district of this Court merely remanded for the Commission to do so. *Id*. at 252. Employer relies on *Lawrence* to argue that Claimant should have filed her claims in 2005 based solely on her suspicion that she had bilateral carpal tunnel syndrome, or in 2007 following the data-entry project. We find no merit in either argument. *Lawrence* is factually distinguishable because: (1) Claimant tested negative for carpal tunnel syndrome in 2005; (2) she was given a different diagnosis of tendonitis in 2007, and her symptoms resolved after a short course of treatment; and (3) Claimant was told that she did not have carpal tunnel syndrome by physicians in 2005 and 2007. Placing an obligation on Claimant to self-diagnose and file a workers' compensation claim in either of those years is not supported by the plain language of § 287.063.3 because it would not have been reasonably discoverable and apparent to Claimant that she suffered from work-related carpal tunnel syndrome at that time.[7] Given the circumstances present in this case, Employer's reliance on *Lawrence* is misplaced. Therefore, the second prong of Employer's argument fails.

The third prong of Employer's argument, relying on *Miller*, is also misplaced. In *Miller*, 316 S.W.3d at 464, the western district of this Court upheld the Commission's factual finding that one of the employee's claims for carpal tunnel syndrome with a 2007

---

[7] As the Commission explained:

On the one hand, employer expects us to elevate employee's lay opinion regarding the proper diagnosis and work-relatedness of her upper extremity problems as sufficient to obligate her to file a claim for compensation, notwithstanding the unanimous opinions from the treating and evaluating physicians that she did not have carpal tunnel syndrome in 2005 and 2007. On the other, employer asks us to credit the opinion from Dr. Crandall that employee's carpal tunnel syndrome is, in any event, the product of a number of non-work-related risk factors.

15

date of injury was duplicative of another carpal tunnel claim that she had filed with a 2004 date. *Id*. Both the employee's claims "gave an identical description" of her injury, and the employer offered medical testimony to support a finding that the 2007 claim did not set out a new injury. *Id*. at 464-66. After concluding that the duplicative claim should be dismissed without prejudice, the Court ordered the Commission to consolidate the other claims and address the case on the merits. *Id*. at 466-67.

Employer relies on *Miller* to argue Claimant's two 2012 claims "were duplicative of the 2007 claim" and "are barred by the applicable statute of limitations as not filed timely[.]" We find no merit in this argument because *Miller* is distinguishable. Although Employer's argument refers to "the 2007 claim[,]" Employer concedes that "Claimant has never filed a Claim for Compensation" in 2007 or in 2005. We reject Employer's specious argument that the two claims Claimant did file are duplicative of a claim that she did not file. Accordingly, the third prong of Employer's first argument fails.

*Employer's Second Argument*

The second argument made by Employer is that the Commission misapplied § 287.063.3 by applying a "subjective" rather than "the appropriate objective standard" to decide when the occupational disease was reasonably discoverable and apparent. According to Employer, that misapplication of law is found in the Commission's reference to Claimant when explaining its findings, i.e., whether the occupational disease was "reasonably discoverable and apparent *to employee* that she'd suffered … carpal tunnel syndrome" (italics added). We disagree.

As explained above, the statutory language in § 287.063.3 requiring an occupational disease to be "reasonably discoverable and apparent" has long been

16

interpreted to mean that the running of the statute of limitations commences "[i]f it becomes reasonably discoverable and apparent *to the employee* that he needs medical or surgical treatment …." *Williams v. S. N. Long Warehouse Co.*, 426 S.W.2d 725, 734 (Mo. App. 1968) (italics added); *see also* **Enyard**, 390 S.W.2d at 431 (affirming the Commission's finding that the claim was filed within one year of the time it became reasonably discoverable and apparent *to claimant* that he had sustained a compensable injury). Although the legislature made many revisions to Chapter 287 in 2005, no change was made to the "reasonably discoverable and apparent" language in § 287.063.3. We presume the legislature was aware of and adopted this settled judicial construction by reenacting § 287.063.3 with this language included. *See Flowers v. City of Campbell*, 384 S.W.3d 305, 312 (Mo. App. 2012). The western district of this Court has applied § 287.063.3 in the same way as previous cases. *See, e.g.*, *Smith v. Capital Region Med. Ctr.*, 412 S.W.3d 252, 262 n.9 (Mo. App. 2013) (holding that "the evidence in the record supported the Commission's determination that Smith's claim did not accrue until 2005, when he was informed by his physician of a possible connection between his hepatitis C and his employment with Capital Region"). Accordingly, Employer's second argument fails.

In sum, there is no merit to any of Employer's various arguments that the Commission "misapplied section 287.063.3[.]" Therefore, Point 1 is denied.

*Point 2*

Employer's second point challenges the Commission's findings on medical causation. "An occupational disease due to repetitive motion is compensable only if the occupational exposure was the prevailing factor in causing both the resulting medical

17

condition and disability." § 287.067.3. "The **'prevailing factor'** is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." *Id*. (bold emphasis in original). Here, the Commission credited Dr. Schlafly's opinion as to causation because:

> Dr. Schlafly persuasively testified (as we so find) that [Claimant's] typing duties involved repetitive flexor tendon movements from repetitive motion of the fingers, which in turn created a process of gradual inflammation around the flexor tendons in the area of the median nerve and the carpal tunnel. We find that [Claimant's] occupational exposure to this gradual inflammation process is the prevailing factor causing [Claimant] to suffer the resulting medical condition of [right and left] carpal tunnel syndrome.

Employer's point contends the Commission erred in making the above finding "because the facts found by the Commission do not support the award[.]" According to Employer, "the Commission erroneously found that Dr. Schlafly's testimony was more persuasive on causation" because his opinions "were based upon a large data entry project that occurred in 2011 when the evidence clearly shows, and the Commission found, that the data entry project occurred in 2007." We disagree.

While Dr. Schlafly mistakenly referred in his deposition to the data-entry project occurring in 2011 instead of 2007, that particular project was not the only basis for his opinion that Claimant's carpal tunnel syndrome was work-related. Dr. Schlafly also relied on Claimant's normal work duties, which involved repetitive motion of the hands in the form of typing throughout most of the work day. The Commission credited Claimant's testimony that her normal work duties involved keyboarding 85-90% of each day and that she was exposed for 14 years to repetitive hand-intensive work duties. Dr. Schlafly also opined, as the Commission found, that it was Claimant's "occupational exposure to this gradual inflammation process" that formed the basis for Dr. Schlafly's diagnosis of

18

bilateral carpal tunnel syndrome in 2012.  His opinion is supported, in part, by Dr. Cooper's diagnosis of tendinitis in 2007 and Dr. Crandall's testimony that Claimant had no evidence of carpal tunnel syndrome in 2007.  What Employer is essentially arguing here is that the Commission should have found Dr. Crandall more credible on the issue of causation.  It is well settled, however, "[t]he weighing of conflicting medical causation testimony lies within the Commission's sole discretion and cannot be reviewed by this court." *Proffer v. Fed. Mogul Corp.*, 341 S.W.3d 184, 187-88 (Mo. App. 2011); *see Armstrong*, 391 S.W.3d at 470-71 (the Commission's decision as to which of the various medical experts to believe is binding on this Court).[8]  Accordingly, Point 2 is denied.

## Point 3

Employer's third point challenges the Commission's award of past medical expenses pursuant to § 287.140.  This statute requires an employer to provide an employee with such care "as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury."  § 287.140.1; *Maness v. City of De Soto*, 421 S.W.3d 532, 544 (Mo. App. 2014).[9]  A sufficient factual basis exists for the Commission to award compensation for past medical expenses when:  (1) the claimant introduces his or her

---

[8] Employer also argues that Commission's causation findings are not supported by sufficient competent evidence in the record and are against the weight of the evidence. Both arguments are predicated upon the premise that the Commission should not have relied upon Dr. Schafly's opinion on causation, which lacks merit for the reasons set out above.

[9] Further, "[i]f the employer is on notice that the claimant needs treatment, and the employer fails or refuses to provide it, the claimant may select his or her own medical provider and hold the employer liable for the costs thereof." *Martin v. Town & Country Supermarkets*, 220 S.W.3d 836, 844 (Mo. App. 2007); *Abt v. Mississippi Lime Co.*, 420 S.W.3d 689, 704 (Mo. App. 2014).

medical bills into evidence; (2) the claimant testifies that the bills are related to and the product of his or her work injury; and (3) "the bills relate to the professional services rendered as shown by the medical records in evidence." *Martin v. Mid-America Farm Lines, Inc.*, 769 S.W.2d 105, 111-12 (Mo. banc 1989), *superseded by statute on other grounds by* § 287.160.3; *Maness*, 421 S.W.3d at 544. When these three elements are met, the burden shifts to the employer to prove some reason the award of past medical expenses is inappropriate. *See Farmer-Cummings v. Pers. Pool of Platte County*, 110 S.W.3d 818, 823 (Mo. banc 2003) (such as employee's liability for the medical expenses was extinguished, or that liability does not otherwise fall within other statutory provisions); § 287.270 (allowing an employer to receive a credit for medical bills paid by the employer).[10] The following additional facts are relevant to this point.

To meet Claimant's burden, she provided her bills, the medical records reflecting the treatment giving rise to the bills, and testimony identifying the bills and establishing that she received them as a result of the disputed treatment. The Commission credited Dr. Schlafly on the issue of past medical expenses and concluded that the "disputed treatment was reasonably required to cure and relieve from the effects of [Complaint's] compensable work injury of [right and left] carpal tunnel syndrome." The Commission then noted the

_____

[10] Section 287.270 RSMo (2000) provides:

No savings or insurance of the injured employee, nor any benefits derived from any other source than the employer or the employer's insurer for liability under this chapter, shall be considered in determining the compensation due hereunder; except as provided in subsection 3 of section 287.170, and employers of professional athletes under contract shall be entitled to full credit for wages or benefits paid to the employee after the injury including medical, surgical or hospital benefits paid to or for the employee or his dependents on account of the injury, disability, or death, pursuant to the provisions of the contract.

burden properly shifted to Employer to demonstrate that Claimant was not required to pay the billed amounts, that her liability for the disputed amounts was extinguished, or that the reason the liability was extinguished does not otherwise fall within the provisions of § 287.270.

To meet Employer's burden, Employer relied on Claimant's testimony, elicited on cross-examination. At that time, Claimant testified that her insurance through Employer paid for all of her medical expenses and "to her knowledge" those bills were "completely satisfied." Claimant also testified, however, that she was unaware of whether she would be asked for reimbursement of these charges in the event the case is deemed compensable under workers' compensation. The Commission relied on this latter testimony and specifically found that, based on Claimant's lack of training or expertise in these matters, the Commission could not rely on her testimony alone that her liability for past medical expenses has been extinguished:

> There is no showing on this record that [Claimant] has any particular training or expertise with regard to the topics of medical billing, insurance law, or an employee's liability for past medical expenses incurred in the context of a disputed workers' compensation case. Employer did not provide any other evidence to demonstrate that [Claimant's] liability for her past medical bills has been extinguished, such as testimony from billing representatives with the healthcare providers or a representative from [Claimant's] insurance program with [E]mployer. After careful consideration, we do not deem [Claimant's] testimony to persuasively support a finding that her liability for her past medical expenses has been extinguished.

We defer to this factual finding. Employer also argued that, because it is self-insured for workers' compensation purposes, any payment by Claimant's health insurance through Employer must be deemed a payment directly from Employer for purposes of § 287.270. The Commission rejected this argument because:

21

[T]he fact that [E]mployer is self-insured for workers' compensation purposes reveals nothing with regard to the nature of [Claimant's] health insurance with [E]mployer. Employer did not provide any evidence with regard to that insurance policy, and thus failed to establish that such insurance is fully funded by [E]mployer and does not involve any co-pays, co-insurance, deductibles, or monthly premiums payable by [Claimant]. In the absence of any such evidence, we are not persuaded to make a finding that payments from [Claimant's] insurance with [E]mployer constituted payments directly from [E]mployer for purposes of § 287.270.

After finding that Claimant met her burden, the Commission found that Employer failed to meet its burden and awarded Claimant past medical expenses.

Employer's point contends the Commission erred by finding Employer liable for past medical expenses "because the facts found by the Commission do not support the award[.]" According to Employer, the Commission erred in finding that "Employer failed to meet its burden of (1) demonstrating that Claimant's liability for her past medical expenses has been reduced or extinguished in any amount, and (2) showing that the reason Claimant's liability was extinguished does not otherwise fall within the provisions of § 287.270" because "the uncontroverted evidence established that Claimant's prior medical bills were satisfied by her Employer and Claimant presented no evidence that she may be responsible for such medical charges." We disagree.

Employer's point does not argue the Commission erred in finding Claimant met her burden, but instead asserts error only in finding Employer failed to meet its burden to prove some reason the award of past medical expenses is inappropriate. *See Farmer-Cummings*, 110 S.W.3d at 822-23; *see also Maness*, 421 S.W.3d at 544. Generally, if a medical provider has allowed write-offs and fee reductions for its own purposes and the employee is not legally subject to further liability, then the employee is not entitled to a windfall recovery. *Farmer-Cummings*, 110 S.W.3d at 822-23. On the other hand, if the employee

22

"remains personally liable for any of the reductions, the employee is entitled to recover them as "fees and charges" pursuant to § 287.140. *Id*. The employer carries the burden of proving by a preponderance of the evidence that it is entitled to credit for write-offs and fee reductions. *Id*.; *see Proffer*, 341 S.W.3d at 190.

On appeal, Employer relies exclusively on Claimant's cross-examination testimony that Employer paid for all of her medical expenses, and "to her knowledge" those bills were "completely satisfied." Contrary to Employer's argument, it was not Claimant's burden to present "evidence that she may be responsible for such medical charges" – it was Employer's burden to prove she was not. *See Farmer-Cummings*, 110 S.W.3d at 822-23; *see, e.g.*, *Proffer*, 341 S.W.3d at 190 (to seek a reduction for write-downs, write-offs, or adjustments, employer had to show that claimant had no reimbursement obligation or other liability to pay such sums). Employer failed to present any of its own evidence to demonstrate that liability for Claimant's past medical bills had been extinguished or that payments from Claimant's insurance with Employer constituted payments directly from Employer for purposes of § 287.270. Review of the record reveals no basis to reverse the Commission's finding that Employer failed to carry its burden. "As the party claiming a credit, Employer carried the burden of proving it." *Proffer*, 341 S.W.3d at 190. Point 3 is denied.

The awards allowing workers' compensation benefits for Claimant's right and left carpal tunnel syndrome, respectively, are affirmed.

JEFFREY W. BATES, P.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

MARY W. SHEFFIELD, C.J. – CONCUR