In the
 Missouri Court of Appeals
 Western District
KAREN RITCHIE, )
 )
 Respondent, ) WD84123
 )
v. ) OPINION FILED: May 25, 2021
 )
SILGAN CONTAINERS )
MANUFACTURING CORP. AND )
TRAVELERS CASUALTY INS. OF )
AMERICA, )
 )
 Appellants. )

 Appeal from the Labor and Industrial Relations Commission

Before Division Three: Gary D. Witt, Presiding Judge, Edward R. Ardini, Jr., Judge and
 W. Douglas Thomson, Judge

 Silgan Containers Manufacturing Corporation ("Silgan") and its insurer, Travelers

Casualty Insurance of America (collectively "Appellants"), appeal the Final Award

Allowing Compensation ("Award") of the Labor and Industrial Relations Commission

("Commission") finding Karen Ritchie ("Ritchie") sustained a compensable work-related

injury, finding her to be permanently and totally disabled and awarding her statutory

damages for disfigurement of her elbow. Ritchie was further awarded $25,456.66 for

uncompensated past medical expenses and was found to be eligible for future medical
expenses. Appellants argue the Award is not supported by substantial evidence and that

Ritchie's claims were barred for lack of a timely notice of injury. We affirm and pursuant

to section 287.160.3 we note the Award is subject to ten percent interest per annum on

Ritchie's weekly benefit payments attributable to her permanent total disability beginning

thirty days from the ALJ's original award on October 16, 2019.1

 Factual and Procedural Background2

 From 2009 through July 17, 2017, Ritchie was employed by Silgan as either a

Fork Lift Operator or later as an Inspector. In her capacity as a Fork Lift Operator,

Ritchie was primarily responsible for loading and unloading trucks, preparing boxes and

lids for the production line, and making boxes and lids. Ritchie worked twelve-hour

shifts and operated the fork lift for approximately nine hours each shift. In operating the

fork lift, Ritchie used her right hand and arm to move levers that raise and lower the arms

of the lift and used her left hand to continuously turn the steering wheel more than 1,000

times in each direction during her shift. While she was employed by Silgan, Ritchie

began to suffer pain in her left elbow. Ritchie is right-hand dominant.

 On May 10, 2014, Ritchie was working in her garden at home and fell and

sustained a fractured wrist. Ritchie was treated by Dr. Daniel Smith ("Dr. Smith"), who

placed her wrist in a cast. On November 1, 2014, the pain in Ritchie's left elbow, which

 1
 Section 287.160.3 ("[I]f such claims for weekly compensation are contested solely by the employer or
insurer, no interest shall be payable until after thirty days after the award of the administrative law judge.")
 2
 "When reviewing the evidence on the record, we do not view the facts in the light most favorable to the
award, nor do we make all reasonable inferences in favor of the award. Rather, we view the facts neutrally." Austin
v. AM Mech. Servs., 604 S.W.3d 665, 667 n.2 (Mo. App. W.D. 2020) (quoting Tombaugh v. Treasurer of State, 347
S.W.3d 670, 674 (Mo. App. W.D. 2011)). However, credibility determinations made by the Commission are
binding on this court. Annayeva v. SAB of TSD of City of St. Louis, 597 S.W.3d 196, 200 n. 8 (Mo. banc 2020).

 2
preceded her wrist injury, became intolerable, and Ritchie experienced sharp shooting

pains, which began at her left elbow and radiated down her left arm to her left ring finger

and left small finger. Ritchie sought treatment from Dr. Smith on November 10, 2014.

At that time, Dr. Smith noted that:

 Ms. Ritchie returns six months post fracture of the left wrist. The patient
 continues to have a constant ache and shooting pain in that wrist. She
 drives a forklift and has had some pain that actually gets nauseous. She
 describes a burning pain and dysesthesias in multiple fingers.

Dr. Smith also noted that Ritchie had a subtle Madelung deformity of the wrist. 3 Dr.

Smith recommended Ritchie undergo an MRI and an EMG.

 Following these tests, Dr. Smith evaluated Ritchie on January 9, 2015. During

that visit, Dr. Smith gave Ritchie an elbow injection of methylprednisolone/bupivacaine

mixture, and Dr. Smith recommended that Ritchie wear a tennis elbow strap. Dr. Smith

noted that Ritchie was working many hours, which could be contributing to Ritchie's

pain. Ritchie was again evaluated by Dr. Smith on October 30, 2015 after a second EMG

was performed. Dr. Smith diagnosed Ritchie with cubital tunnel syndrome and noted that

"[Ritchie] is trying to change her job and this may help her out as far as decreasing some

of the stress on the elbow." Shortly after this appointment, Ritchie applied for the

position of Inspector, which was granted.

 Dr. Smith performed two surgeries to treat Ritchie's injuries. The first surgery

occurred on February 25, 2016, and was described by Dr. Smith as a "left cubital tunnel

release [and] modified Bosworth [procedure]." The second surgery occurred on

 3
 A Madelung deformity is a condition where the radius shortens and the ulna lengthens.

 3
March 31, 2016, and consisted of an exploration and excision of adhesions of the left

ulnar nerve. Ritchie used FMLA leave and short-term disability leave following these

surgeries, and returned to Silgan as an Inspector on May 16, 2016. On July 11, 2016,

Ritchie was evaluated by Dr. Smith who recommended another EMG because Ritchie

continued to complain of left elbow pain along the ulnar nerve.

 The following day, Ritchie provided written notice of her injury to Silgan's Human

Resources Manager, Amy Cohorst ("Cohorst"). Cohorst sent Ritchie to a local hospital,

who then referred Ritchie back to Dr. Smith. Dr. Smith performed another EMG. Dr.

Smith opined the ulnar nerve had returned to normal following the two surgeries.

 On December 23, 2016, Ritchie began receiving treatment from Dr. Jeffrey

Bradley ("Dr. Bradley"). Dr. Bradley ordered an MRI of the left elbow and another

EMG. Dr. Bradley opined the MRI demonstrated: (1) mild ulnar neuritis; (2) the ulnar

nerve was transposed to just anterior to the epicondyle; (3) chronic inflammatory

changes; (4) mild soft tissue edema; (5) mild common flexor origin tendinopathy; (6)

mild edema and denervation of the flexor carpi ulnaris muscle. Dr. Bradley opined that

Ritchie did not suffer from complex regional pain syndrome. Dr. Bradley recommended

pain management as a treatment and advised that another surgery was an option but that

surgery was risky and may not result in any additional benefit.

 Dr. Bradley performed a third surgery on February 24, 2017, which Dr. Bradley

described as a left ulnar nerve decompression with submuscular transposition. Ritchie's

condition did not improve. Dr. Bradley recommended the following work restrictions

related to Ritchie's left arm: (1) no lifting more than one pound; (2) no pushing, pulling,

 4
or gripping; and (3) no use of vibratory equipment. Silgan did not have a position that

could accommodate these restrictions, and Silgan terminated Ritchie on July 17, 2017.

At some point, Ritchie applied for short-term disability, and at that time, Dr. Bradley

opined Ritchie had left cubital tunnel syndrome and also opined that Ritchie's injury was

not related to her work with Silgan.

 On September 26, 2017, Ritchie was evaluated by Dr. Ernest Neighbor ("Dr.

Neighbor"). Dr. Neighbor diagnosed Ritchie with complex regional pain syndrome,

lateral epicondylitis, and cubital tunnel syndrome. Dr. Neighbor opined that Ritchie's use

of her left hand in operating the forklift was the prevailing factor causing these diagnoses.

In addition to the restrictions recommended by Dr. Bradley, Dr. Neighbor opined that

Ritchie required "the ad-lib ability to change postures in order to rest her arm" and the

ability to nap during the day, which were necessary due to Ritchie's occupational disease.

The ability to nap during the day was necessitated to her loss of sleep at night due to

being awakened two to three times each night from pain in her arm and the drowsiness

caused by the pain medications she needed to treat her arm.

 On May 2, 2018, Ritchie was evaluated by Dr. James Zarr ("Dr. Zarr"). Dr. Zarr

agreed with Dr. Bradley's restrictions and opined that Ritchie sustained 25% permanent

partial disability to her left elbow. Dr. Zarr noted that "I am not exactly certain what the

'prevailing factor' is for [Ritchie's] ulnar nerve pain. Employment activities are a

possibility." Dr. Zarr also opined that Ritchie will require medications on a long-term

basis. Subsequently on May 15, 2019, Dr. Zarr amended his report to state that he

believed Ritchie's work was not the prevailing factor in causing Ritchie's elbow pain.

 5
 Ritchie was also evaluated by Michael Dreiling ("Dreiling") and Terry Cordray

("Cordray") to determine whether Ritchie was able to compete in the open labor market.

Dreiling opined that Ritchie was unable to return to any employment given her extensive

work restrictions and that Ritchie was not a realistic candidate to pursue formal retraining

services. Dreiling concluded that Ritchie was permanently totally disabled. Cordray

opined that Ritchie could compete in the open labor market and was a good candidate for

vocational rehabilitation or community college.

 On October 14, 2016, Ritchie filed a Claim for Worker's Compensation Benefits

with the Division of Workers' Compensation. An Administrative Law Judge ("ALJ")

conducted a hearing on August 16, 2019. During the hearing, Ritchie testified that she

had incurred $59,732.15 in uncompensated medical expenses. However, Ritchie only

introduced medical bills demonstrating she had incurred $25,456.66 in medical expenses

representing those which arose after she provided notice to her employer of her work-

related injury.

 On October 16, 2019, the ALJ entered his final award concluding that: (1) Ritchie

sustained an occupational injury which rendered her permanently totally disabled finding

Ritchie was unable to compete in the open labor market; (2) Ritchie provided timely

notice of her injury to Silgan; (3) Ritchie's claim for compensation was not barred by the

statute of limitations. The ALJ awarded Ritchie permanent total disability benefits of

$861.04 each week from July 17, 2017, continuing for the remainder of Ritchie's life;

$25,456.66 for uncompensated medical expenses; future medical treatment related to

 6
Ritchie's injury; and $451.02 per week for twelve weeks for damages relating to the

disfigurement to the right elbow in the total amount of $5,412.24.

 Appellants filed a timely Application for Review with the Commission. The

Commission affirmed the ALJ's findings of facts and conclusions of law. However, the

Commission amended the ALJ's award finding that Ritchie's weekly payments for

permanent total disability benefits should have been effective on May 2, 2018, which was

the date of Ritchie's maximum medical improvement. This appeal timely followed.

 Standard of Review

 Our review of the Award is governed by Section 287.495.1,4 which provides in

relevant part:

 The court, on appeal, shall review only questions of law and may modify,
 reverse, remand for rehearing, or set aside the award upon any of the
 following grounds and no other:

 (1) That the commission acted without or in excess of its powers;

 (2) That the award was procured by fraud;

 (3) That the facts found by the commission do not support the award;

 (4) That there was not sufficient competent evidence in the record to
 warrant the making of the award.

"We review the findings and award of the Commission rather than the ALJ, to the extent

that [the Commission's ruling] departs from the ALJ's ruling." Austin v. AM Mech.

Servs., 604 S.W.3d 665, 668 (Mo. App. W.D. 2020) (internal quotations omitted). We

review the ALJ's findings and conclusions to the extent that the Commission affirms and

 4
 All statutory references are to the Revised Statutes of Missouri (2000) as supplemented through the date
of Ritchie's injury on November 1, 2014, unless otherwise indicated.

 7
adopts the ALJ's findings and conclusions. Id. "While we defer to the Commission's

factual findings, we review issues of law, including the Commission's interpretation and

application of the law, de novo." Id. (internal quotations omitted).

 Discussion

 Appellants raise five points on appeal. In their first point, Appellants assert the

Commission erred by finding that Ritchie sustained an occupational disease due to

repetitive motion arguing the case involves a sophisticated injury requiring expert

scientific or medical testimony to establish "the relationship between the complained of

condition and the asserted cause," and there was not sufficient competent evidence in the

record to warrant the Commission's finding that Ritchie sustained an occupational

disease. In their second point, Appellants argue that the Commission erred by finding the

claim was not barred for lack of timely written notice within thirty days of a doctor

making a causal connection between the underlying medical condition and some work-

related activity or exposure, and Ritchie failed to prove that Appellants were not

prejudiced by the lack of timely notice. In their third point, Appellants argue the

Commission erred by finding that Ritchie is permanently and totally disabled because

Ritchie can compete in the open labor market and is able to return to employment as

determined by Cordray. In their fourth point, Appellants argue the Commission erred by

finding that Ritchie is entitled to future medical treatment because there is not sufficient

competent evidence to establish there is a reasonable probability that future medical

treatment will be necessary due to the occupational disease and that the need for future

treatment flows from the occupational disease. Finally, in their fifth point, Appellants

 8
assert the Commission erred by finding Appellants liable for past medical expenses

incurred by Ritchie because there was not sufficient competent evidence to establish that

Ritchie's medical treatment was reasonably required to cure and relieve Ritchie of the

effects of the occupational disease and that Ritchie is actually liable to repay the

providers for those expenses. We address these points in turn.

 Point One

 In their first point, Appellants argue the Commission erred by finding that Ritchie

had sustained an occupational disease due to repetitive motion because expert scientific

or medical testimony was necessary to establish the relationship between the complained

of condition and the asserted cause and there was not sufficient competent evidence to

support the Commission's finding that Ritchie sustained an occupational disease.

"Whether the [A]ward is supported by competent and substantial evidence is judged by

examining the evidence in the context of the whole record." Malam v. State, Dep't of

Corr., 492 S.W.3d 926, 928 (Mo. banc 2016) (quoting Hampton v. Big Boy Steel

Erection, 121 S.W.3d 220, 223 (Mo. banc 2003)). "Sufficient competent evidence is

evidence which has probative force on the issues and from which the trier of facts can

reasonably decide the case." Harris v. Ralls Cnty., 588 S.W.3d 579, 597 (Mo. App. E.D.

2019) (internal quotations omitted). "Sufficient competent evidence is a minimum

threshold: The testimony of one witness, even if contradicted by the testimony of other

witnesses, may be sufficient competent evidence to support an administrative decision."

Id. at 598 (internal quotations omitted).

 9
 Appellants argue that Dr. Neighbor's report and deposition testimony is not

sufficient competent evidence to support the Commission's finding that Ritchie sustained

an occupational disease. In essence, they argue that Dr. Neighbor's examination was

inadequate because Dr. Neighbor did not ascertain whether Ritchie's injury was to her

dominant or non-dominant hand, did not ascertain when Ritchie's symptoms began, did

not review any of her MRI images or x-ray films, and did not "put stock" in any of

Ritchie's EMGs. Appellants assert that Dr. Bradley's reports and Dr. Zarr's reports were

more thorough and urge this Court to adopt their reports as more credible. Appellants,

relying on Brotherton v. International Shoe Company, 360 S.W.2d 108 (Mo. App. 1962),

argue that this Court does not need to defer to the Commission's factual findings on this

point because the sole basis of the factual finding was derived from the written record

including medical reports and deposition testimony of witnesses. Thus, Appellants assert

that we should independently review the medical reports and deposition testimony and

determine the evidentiary value of these documents because this Court is in the same

position as the ALJ and the Commission in interpreting the credibility of this evidence.

 In Brotherton, 360 S.W.2d at 111, the court held that "in interpreting the written

statements and the deposition of the doctors, we do not owe the same amount of

deference we would if the question had been one raised by the interpretation of or

drawing of inferences from the testimony of persons who appeared and testified." (citing

Wood v. Wagner Elec. Corp., 197 S.W.2d 647, 652 (Mo. banc 1946)). This holding has

been abrogated. Our Supreme Court addressed this specific issue in MSEJ, LLC v.

Transit Casualty Company, 280 S.W.3d 621, 623 (Mo. banc 2009), holding that in an

 10
appellate court's review of documentary evidence, "even though this Court has the same

opportunity to review the evidence as does the circuit court, the law allocates the function

of fact-finder to the circuit court." Similarly, in the instant case, section 287.495.1

mandates that "the findings of fact made by the [C]ommission within its powers shall be

conclusive and binding."

 Additionally, section 287.495.1 does not distinguish determinations of credibility

pertaining to live testimony from determinations of credibility pertaining to documentary

evidence. Determinations of credibility and the extent the Commission relied on them in

reaching its conclusions are indeed findings of fact. Therefore, because section

287.495.1 allocates the function of fact-finder to the Commission, we are bound by its

factual findings even when those findings are derived solely from documentary evidence

despite the fact that this Court has the same opportunity to review that documentary

evidence as does the Commission. See, Annayeva v. SAB of TSD of City of St. Louis, 597

S.W.3d 196, 200 n. 8 (Mo. banc 2020); Harris, 588 S.W.3d at 600 ("Generally, [w]e

defer to the Commission's findings as to weight and credibility of testimony and are

bound by its factual determinations." (internal quotations omitted)).

 Further, "[t]his Court may not substitute its judgment on the evidence, and when

the evidence before an administrative body would warrant either of two opposed

findings, the reviewing court is bound by the administrative determination, and it is

irrelevant that there is supportive evidence for the contrary finding." Hornbeck v. Spectra

Painting, Inc., 370 S.W.3d 624, 629 (Mo. banc 2012) (citing Pulitzer Pub. Co. v. Lab. &

Indus. Rels. Comm'n, 596 S.W.2d 413, 417 (Mo. banc 1980)) (internal quotations

 11
omitted). Because Dr. Neighbor opined in his medical reports and deposition testimony

that, to a reasonable degree of medical certainty, Ritchie sustained lateral epicondylitis,

cubital tunnel syndrome, and complex regional pain syndrome and that Ritchie's

repetitive motions in operating the fork lift in the course of employment was the

prevailing factor in causing these injuries, there was sufficient competent evidence to

support the Award. Point One is denied.

 Point Two

 In their second point on appeal, Appellants assert that the Commission erred by

finding that Ritchie's claim was not barred for lack of timely written notice because

Appellants established that Ritchie did not provide notice within thirty days of a doctor

making a causal connection between the underlying medical condition and some work-

related activity or exposure and Ritchie failed to prove that Appellants were not

prejudiced by the lack of timely notice.

 Section 287.420 provides in relevant part:

 No proceedings for compensation for any occupational disease or repetitive
 trauma under this chapter shall be maintained unless written notice of the
 time, place, and nature of the injury, and the name and address of the
 person injured, has been given to the employer no later than thirty days
 after the diagnosis of the condition unless the employee can prove the
 employer was not prejudiced by failure to receive the notice.

"Looking to the plain, obvious, and natural import of the language, it follows that a

person cannot be diagnosed with an 'occupational disease or repetitive trauma' until a

diagnostician makes a causal connection between the underlying medical condition and

 12
some work-related activity or exposure." Allcorn v. Tap Enters., Inc., 277 S.W.3d 823,

829 (Mo. App. S.D. 2009).

 In the instant case, the Commission found that Dr. Neighbor was the only

diagnostician to make a causal connection between the repetitive motion disease and

some work-related activity or exposure and that diagnosis was made on December 8,

2017. The Commission found that Dr. Neighbor's diagnosis triggered Ritchie's duty to

provide written notice under section 287.420. Ritchie provided written notice to her

employer of a work-related injury to her left arm on July 12, 2016, which preceded Dr.

Neighbor's diagnosis. Therefore, the Commission determined that Ritchie's notice was

timely.

 On appeal, Appellants argue that the Commission erred in reaching this finding

because Dr. Smith made a causal connection between Ritchie's work activity and her

elbow pain in 2014. We disagree. Dr. Smith began treating Ritchie in May of 2014

following Ritchie's gardening accident during which Ritchie sustained a fractured wrist.

Appellants point out that in his report on November 10, 2014, Dr. Smith noted that

"[Ritchie] drives a fork lift and she has had some pain that she actually gets nauseous.

She describes a burning pain and dysesthesias in multiple fingers." Additionally, on

January 9, 2015, Dr. Smith wrote that "[c]ertainly, [Ritchie] is working a lot of hours

with very little time off that could be contributing." Further on October 2, 2015, Dr.

Smith wrote "[t]he patient continues to have problems, especially with trying to drive a

fork lift and use a palm down type activity with the left elbow." Finally, on October 30,

2015, Dr. Smith noted that "[Ritchie] is trying to change her job and this may help her out

 13
as far as decreasing some of the stress on the elbow." Appellants argue that these entries

in the medical records establish a work-related diagnosis, which should have put Ritchie

on notice that she needed to file an injury report with her employer.

 While these statements reflect that Dr. Smith believed Ritchie's operation of the

fork lift exacerbated her gardening injury, the Commission could reasonable find that Dr.

Smith never opined that Ritchie had sustained a work-related occupational disease or

injury arising from the repeated use of her elbow. Therefore, his statements did not

trigger Ritchie's duty to provide written notice to Silgan. Thus, the Commission did not

err in finding Ritchie's written notice on July 12, 2016 to be timely. Point Two is denied.

 Point Three

 In their third point on appeal, Appellants argue that the Commission erred by

finding Ritchie is permanently and totally disabled because Ritchie can compete in the

open labor market and is able to return to employment as determined by Cordray. More

specifically, Appellants urge this Court to "adopt Mr. Cordray's opinion and find

[Ritchie] is indeed capable of competing in the open labor market." As addressed

previously, it is not in this Court's purview to make factual findings in direct

contradiction of those made by the Commission. Point One, supra. Our review is

statutorily limited to determine whether: (1) the Commission acted within its powers, (2)

the Award was not procured by fraud; (3) the facts found by the Commission support the

Award; or (4) the Award is supported by sufficient competent evidence. Section

287.495.1. We may not substitute our judgment on the evidence for that of the

Commission. Hornbeck, 370 S.W.3d at 629. Furthermore, when the evidence before the

 14
Commission would warrant either of two opposed findings, we are bound by the

Commission's determination and it is irrelevant that there is evidence which would

support a contrary finding. Id.; see also Section 287.495.1 ("[T]he findings of fact made

by the commission within its powers shall be conclusive and binding.").

 In the instant case, two expert witnesses provided opposing testimony: Dreiling

opined that Ritchie was not able to compete in the open labor market, and Cordray opined

that Ritchie could compete in the open labor market. Because substantial evidence before

the Commission would warrant either of these two findings, we are bound by the

Commission's determination that Ritchie was not able to compete in the open labor

market.

 At the time of the hearing, Ritchie was fifty-seven years old and had not had any

formal classroom education in the last thirty-nine years. Dr. Bradley and Dr. Zarr opined

that Ritchie had the following permanent restrictions to her left arm: no lifting more than

one pound; no pushing, pulling, or gripping; and no use of vibratory equipment. Dr.

Neighbor further opined that Ritchie required the ability to change positions as needed to

support her arm and the ability to nap during the day. Dreiling determined that Ritchie

had no transferrable job skills and was not a good candidate for vocational rehabilitation

or community college. Cordray also stated that his opinion regarding Ritchie's ability to

compete in the open labor market would change if Ritchie required the ability to nap

during the day. Thus, we conclude the Commission's finding that Ritchie was not able to

 15
compete in the open labor market is supported by substantial competent evidence. Point

Three is denied. 5

 Point Four

 In their fourth point on appeal, Appellants assert the Commission erred in finding

that Ritchie is entitled to future medical treatment because Ritchie did not meet her

burden of proving both that there is a reasonable probability that future medical treatment

will be necessary due to the occupational disease and that the need for future treatment

flows from the alleged occupational disease.

 First, Appellants argue in summary fashion that if this court were to find that

Ritchie failed to prove that she sustained "a compensable occupational disease, nor was

any alleged occupational disease the prevailing factor in causing her resulting medical

condition or disability" that "there is no compensable occupational disease for her future

medical needs to 'flow from.'" However, as addressed previously, there was sufficient

evidence in the record to support the Commission's finding that Ritchie sustained a

compensable occupational disease. Point One, supra. Therefore, we will not further

address this portion of Appellants' argument under this point.

 "[O]nce it is determined that there has been a compensable accident, a claimant

need only prove that the need for treatment and medication flow from the work injury."

Tillotson v. St. Joseph Med. Ctr., 347 S.W.3d 511, 519 (Mo. App. W.D. 2011). A

 5
 Appellants argue in the alternative, that Ritchie's need for the ability to sleep during the day is the result
not of her occupational disease but rather from a sleep disorder that existed prior to the date of Ritchie's injury,
which could defer some of Appellants' liability to the Second Injury Fund. However, the Commission did not find
that Ritchie suffered from any sleep disorder, and we will not exceed our authority by making new and different
findings of fact.

 16
claimant need not show that the work accident is the prevailing factor in necessitating the

recommended medical treatment. Id. at 521. Because Ritchie has sustained a

compensable occupational disease, we must address whether there is sufficient competent

evidence to support a conclusion that Ritchie's future medical care flows from her

occupational disease. Ritchie testified that she is treated by physicians every three

months to attempt to alleviate her pain. Dr. Neighbor, Dr. Bradley, and Dr. Zarr opined

that Ritchie will require future medical treatment pertaining to Ritchie's pain in the left

arm. Furthermore, Dr. Neighbor testified in his deposition:

 And when I saw her, it was clear, from my examination, that the main
 problem that she was having was her ulnar nerve at the elbow. And that is
 what's causing the reflex sympathetic dystrophy and the need -- chronic
 pain syndrome and the need for the Lyrica and the Ultram and all that.

Because Dr. Neighbor opined that the damage to the ulnar nerve flowed from Ritchie's

repetitive use in operating the fork lift, substantial competent evidence supports the

Commission's finding that the need for future medical treatment is necessitated by that

injury. Point Four is denied.

 Point Five

 In their fifth point on appeal, Appellants argue the Commission erred in finding

Appellants liable for Ritchie's past medical expenses because Ritchie did not meet her

burden of proving the medical treatment she received was reasonably required to relieve

 17
her of the effects of her occupational disease and that Ritchie is actually liable to pay the

providers for the past medical expenses.6

 Appellants first argue that the expenses incurred by Ritchie and for which Ritchie

seeks reimbursement do not derive from her occupational injury but instead derive from

attempts to repair damage from the two surgeries performed by Dr. Smith, which were

not effective in treating Ritchie's injury. The evidence supports the Commission's finding

that the two surgeries performed by Dr. Smith were necessitated by Ritchie's repetitive

motions in operating the fork lift, and because those surgeries were unsuccessful, a third

surgery was necessary to alleviate Ritchie's injury. Therefore, because all three surgeries

flow from the occupational disease, Appellants are liable for any medical expenses

incurred by Ritchie. Section 287.140.1. ("[T]he employee shall receive and the

employer shall provide such medical [and] surgical . . . treatment . . . as may reasonably

be required after the injury or disability, to cure and relieve from the effects of the

injury.").

 Appellants next argue that Ritchie does not meet her burden of proving Appellants

are liable to repay the medical expenses incurred. Ritchie has the burden to (1) introduce

her medical bills into evidence; (2) testify that the bills are related to and the product of

her work injury; and (3) establish the bills related to the professional services rendered as

shown by the medical records in evidence. Cook v. Mo. Highway & Transp. Comm'n,

 6
 This point relied on is multifarious. "A point relied on should contain only one issue, and parties should
not group multiple contentions about different issues together into one point relied on." Wolf v. Midwest
Nephrology Consultants, P.C., 487 S.W.3d 78, 84 (Mo. App. W.D. 2016). "Multifarious points preserve nothing for
appellate review." Id. However, because we prefer to decide cases on their merits, and because we can readily
discern and separate the independent claims of error, we exercise our discretion to address the merits of each claim.
Cityview Real Estate Servs., LLC v. K.C. Auto Panel, Inc., 576 S.W.3d 187, 191 (Mo. App. W.D. 2019).

 18
500 S.W.3d 917, 929 (Mo. App. S.D. 2016) (citing Martin v. Mid-Am. Farm Lines, Inc.,

769 S.W.2d 105, 111-12 (Mo. banc 1989)). Although, Ritchie testified that she had

incurred $59,732.15 in medical expenses, Ritchie only introduced medical bills

demonstrating she had incurred $25,456.66 in medical expenses, which arose after she

provided the notice of her injury to Silgan. Ritchie testified that the medical expenses

were a direct result of her work injury, and Dr. Neighbor testified the costs as reported by

Ritchie were related to the medical condition. The Commission found that the medical

records admitted into evidence demonstrated that Ritchie had incurred $25,456.66 in

uncompensated medical bills from July 12, 2016, through the date of the hearing on

August 16, 2019. The amount of liability incurred by Ritchie is a question of fact, and as

addressed supra, we are bound by the Commission's factual findings.

 "Generally, if a medical provider has allowed write-offs and fee reductions for its

own purposes and the employee is not legally subject to further liability, then the

employee is not entitled to a windfall recovery." Id. at 931 (citing Farmer-Cummings v.

Personnel Pool of Platte Cnty, 110 S.W.3d 818, 822-23 (Mo. banc 2003)). The employer

bears the burden of demonstrating that it is entitled to a credit for write-offs. Farmer-

Cummings, 110 S.W.3d at 823. Appellants argue that various medical providers had

written off or would write off some of the past medical expenses incurred by Ritchie.

However, the Commission found that Appellants did not meet their burden because the

testimony of Silgan's Human Resources Director, Cohorst was unpersuasive.

Specifically, the Commission found that Cohorst "testified that she believe[d] the

insurance companies would work out reimbursement but she wasn't sure how that

 19
worked." We defer to the Commission's credibility determinations. Further, the amount

of the credit, if any, to which an employer is entitled is a question of fact, and we defer to

the Commission's factual findings. In the instant case, the Commission found that

Appellants had not met their burden of proving that Ritchie is not legally subject to

further liability for the past medical expenses and that they were therefore not entitled to

a credit for possible reductions or write-offs. We defer to that finding; thus, Point Five is

denied.

 Conclusion

 We affirm.7 Additionally, pursuant to section 287.160.3 we note the Award is

subject to ten percent interest per annum on Ritchie's weekly benefit payments

attributable to her permanent total disability beginning thirty days from the ALJ's original

award on October 16, 2019.

 Gary D. Witt, Judge

All concur

 7
 Ritchie requests this Court to make certain factual findings. However, as addressed previously, it is not in
this Court's purview to make factual findings. Point One, supra.

 20